Billy Ray STRINGER, Appellant,

v.

Robert DILGER, Appellee.

No. 7092.

United States Court of Appeals
Tenth Circuit.

Jan. 15, 1963.

Richard M. Huckeby, Denver, Colo., for appellant.

Wesley H. Doan, Denver, Colo. (Yegge, Hall & Shulenburg, Denver, Colo., on the brief), for appellee.

Before PICKETT, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

The action was brought in the court below by appellant Stringer, as plaintiff, against appellee Dilger, as defendant, upon two causes of action. The first, upon which jurisdiction was founded, alleged a deprivation of plaintiff's civil rights by the defendant. 42 U.S.C. §§ 1983, 1985 and 1986. · As to this cause of action, the complaint alleged the defendant acted both individually and in conspiracy with others, none of whom were made parties to the action. The second cause of action was based upon an alleged assault and battery. Stringer sought to recover compensatory and punitive damages on both counts. The case was tried to a jury and at the close of plaintiff's evidence, the defendant moved for a directed verdict as to both causes of action, which was denied. The motion was renewed and again denied at the close of all of the evidence. However, in submitting the case, the court refused to instruct on the alleged conspiracy but did allow both causes of action, as otherwise alleged, to go to the jury. Plaintiff prevailed and was awarded both compensatory and punitive damages on each cause of action. After the jury verdict in favor of the plaintiff and the entering of a judgment thereupon, the defendant moved for judgment notwithstanding the verdict pursuant to F.R.Civ.P. 50(b), and, that motion was granted as to the first

cause of action but denied as to the second. Plaintiff appealed from this ruling of the trial court and on this appeal also urges trial error in the court's refusal to submit the first cause of action to the jury upon his theory of conspiracy.

■ Appellant concedes that the primary purpose of the appeal is to have the verdict on the first cause of action reinstated because a re-trial of that cause of action on the theory of conspiracy probably would not result in a verdict any more favorable to him than the one set aside by the trial court. Therefore, little need be said about this alleged trial error. Suffice it to say, after considering the jury verdict on the first cause of action, we cannot conclude that Stringer in any way suffered any prejudice by the court's failure to submit the conspiracy theory to the jury. Dilger was the lone defendant in the case and no judgment was sought against the other alleged co-conspirators.

■ The other point raised by Stringer presents a serious question. In our approach to it, we are mindful that the case is here on appeal from an order and judgment sustaining Dilger's motion for judgment notwithstanding the verdict. And, on such a motion based upon the ground of insufficiency of the evidence, the evidence and inferences fairly to be drawn therefrom must be considered in the light most favorable to the party against whom the motion is directed; and if the evidence and the inferences considered in that manner are such that reasonable men in the exercise of fair and impartial judgment may reach different conclusions respecting the critical issue, the motion should be denied. Consolidated Gas & Equipment Co. of America v. Carver, 10 Cir., 257 F.2d 111. Therefore, while the trial record discloses many conflicts in the testimony,[1] the evidence and the inferences fairly to be drawn therefrom must, nevertheless, be considered in the light most favorable to Stringer as the party against whom the motion was directed.

— Viewed in this manner, the evidence may be summarized as follows: At about dusk on the day in question Stringer was driving his automobile on a public highway near Leadville, Colorado, in a prudent manner and with knowledge that Dilger, a state highway patrolman, was following him. On a prior date the two men had exchanged rather harsh words over Dilger's conduct as a patrolman. On the previous day, Stringer was stopped at a roadblock by three patrolmen, including Dilger, for a routine check of his car and driver's license, at which time he was unable to locate his driver's license. On the day in question, Stringer had been to Leadville and went to see about his lost driver's license but the office was closed and he was unable to take care of the matter. As Stringer was on the way from Leadville to his home in Climax, he met Dilger on a curve in the highway and Dilger made a U-turn and commenced to follow him. After following for about 6 miles, Dilger turned on his red light and stopped Stringer. Dilger then told Stringer that he had failed to dim his lights and, after some conversation, asked to see his driver's license. Stringer replied, "I couldn't find them yesterday. I don't know if I can find them now. I have been down to try to get my driver's license, like I was instructed, at my convenience, that they weren't suspended or void in any way. They were still good until the 26th of June, but I can't find them." At Dilger's request, Stringer went back and got in the patrol car and searched through his wallet but couldn't find the license. He then went back to his car to look through the papers in the glove compartment. In the meantime, Dilger made a U-turn with the patrol car and stopped on the opposite side of the highway headed back toward Leadville.

1. The conflicts in the testimony are particularly obvious when the testimony of the two litigants is laid side by side. Needless to say, Dilger's testimony contradicted that of Stringer on all material issues of fact. However, because of the rule just announced we will not refer to Dilger's testimony but will content ourselves with reviewing only the evidence favorable to Stringer.

When Stringer still had not located the license, Dilger told him, "Well, I am going to take you to town" for not having a driver's license.[2] Some further conversation ensued and then Dilger pulled Stringer out from his car, wrenched his arm in an "armlock" to get him back to the patrol car and, when Stringer stumbled and fell, Dilger hit him on the head, shoulders, hands and wrists with a blackjack or "slapper". Stringer admittedly was "cussing" Dilger while being hit with the blackjack but to his knowledge did not strike back. He did resist being handcuffed because he was afraid Dilger would continue beating him and he would be unable to protect himself from the blows of the blackjack, but, upon the arrival of some passing motorists, he reluctantly submitted to being handcuffed.

At the conclusion of this incident, Stringer asked the passing motorist, who happened to be a friend of his, to take his car home, but Dilger stated, "No, that car is to be impounded." Stringer's car was subsequently towed from the scene to Leadville at the direction of Dilger and Stringer was required to pay the towing charge before it was returned to him. After getting the handcuffs on Stringer, Dilger took him to the Leadville jail where his clothing and other belongings were taken from him and he was incarcerated until the next day. No medical attention for the injuries inflicted by the blackjack was offered until late that evening.

During the afternoon of the following day, Stringer was, for the first time, advised that he was being charged with driving while under the influence of liquor and resisting arrest but no test for drunkenness, other than visual observation, was ever made or caused to be made by any of the officers involved. In this same conversation, Stringer was told by one of the state highway patrolmen, other than Dilger, that "It will be pretty foolish to plead not guilty", as "everything was against me". Shortly thereafter, Stringer was taken before a justice of the peace for arraignment and, at first, entered a plea of not guilty. The justice of the peace immediately fixed his bond at $1,000.00 but refused to accept a property bond because the county courthouse was closed and he could not check the records for liens and taxes on any property offered. He also refused to accept a cash bond because it was Saturday and he did not want to keep that much cash over the weekend. Stringer asked the justice of the peace what he was supposed to do and the reply was, "Back to jail," until Monday or Tuesday. When Stringer said he had to get out of jail in order to go to work on Monday or he would lose his job, and asked what he had to do to get out, the justice of the peace stated, "The only way you can get out of here today is if you want to change your plea from not guilty to guilty and you can pay your fine. You can get out of here today." Stringer finally changed his plea to guilty and Dilger was permitted to testify about the incident but the justice of the peace refused Stringer the opportunity to tell his version of what transpired. A fine and costs totaling $355.00 were assessed against Stringer, he was given a 90-day suspended jail sentence and, as a result, his driver's license was suspended for one year. One of Stringer's friends who was present at the arraignment paid his fine and costs in cash and the $355.00 in cash was accepted by the justice of the peace who gave a receipt for that amount.

The evidence also indicates that prior to the arraignment Dilger and the justice of the peace conferred privately for about 15 minutes and the latter was heard to say in this conversation "if Stringer pleaded innocent that he would make it rough enough on him for him to change his plea." The evidence also shows that Stringer was 40 years of age, married, had five children, had been arrested only once before in his life, that being for speeding, and had worked as a miner in the community of Leadville with the same company for 14 years, during which time he had contracted silicosis and because of

---

2. Stringer testified that subsequent to these events he did find his driver's license among his papers kept in his car.

his health would be unable to secure employment as a miner with another company. Stringer further testified that he paid an attorney fee in the amount of $661.00 in an effort to appeal the case, that he lost one day's work at $25.00 per day and paid $10.00 to get his car back, all in addition to the fine and costs paid.

■■ The statutory prerequisites to liability under 42 U.S.C. § 1983[3] are: (1) that the defendant act "under color of" state or local law, and (2) that the plaintiff be subjected to a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Marshall v. Sawyer, 9 Cir., 301 F.2d 639; Cohen v. Norris, 9 Cir., 300 F.2d 24, 30; Selico v. Jackson, 201 F.Supp. 475 (S.D. Cal., 1962). The first prerequisite, i. e., that the defendant act "under color of" state or local law, gives us little trouble for as stated by the Supreme Court in United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368:

> " * * * Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law, is action taken 'under color of' state law. * * * "

The evidence here clearly establishes that Dilger was acting pursuant to state law as a state highway patrolman and he was, therefore, acting "under color of" state law even though such actions may have been in excess of his authority. Marshall v. Sawyer, supra. Indeed, no contention is made by Dilger to the contrary.

■ As to the second statutory prerequisite, appellant points out, and we think correctly so, that Section 1983 encompasses two types of deprivations: (1) those where the defendant directly subjects a citizen to the same, and (2) those where he causes a citizen to be subjected.

In this connection, he contends that the evidence establishes and he is entitled to recover under this section for the following direct deprivations: Illegal arrest without cause or justification, use of excessive force in making such illegal arrest, unlawful seizure of his automobile at the time of arrest, failure to provide medical treatment within a reasonable time after arrest, and failure to advise him until the following day of the charge against him and the reason for his detention. Appellant also contends that the evidence establishes and he is entitled to recover for the following deprivations caused by Dilger: Use of coercion to procure his plea of guilty, refusal to permit him to make bond and failure to allow him to make a statement to the justice of the peace following his change of plea.

■ Section 1983, providing a civil remedy in the federal courts for deprivation of rights, should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions. A specific intent to deprive a person of his constitutional rights, while required under the criminal civil rights statutes,[4] is not a prerequisite to liability thereunder. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492; Selico v. Jackson, supra. Nor is a conspiracy required under this section as it is under 42 U.S.C. § 1985. Selico v. Jackson, supra.

■ The Civil Rights Act, of course, was not enacted to discipline local law-enforcement officials. Smith v. Dougherty, 7 Cir., 286 F.2d 777, cert. denied, 368 U.S. 903, 82 S.Ct. 180, 7 L.Ed.2d 97; Jennings v. Nester, 7 Cir., 217 F.2d 153, cert. denied, 349 U.S. 958, 75 S.Ct. 888, 99 L.Ed. 1281. Nevertheless, local law-enforcement officials are subject to civil liability under § 1983 in cases involving

3. This section reads as follows:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

4. 18 U.S.C. §§ 241, 242.

deprivations, under color of state law, of rights guaranteed by the Constitution and laws of the United States and particularly by the due process clause of the Fourteenth Amendment. Monroe v. Pape, supra; Downie v. Powers, 10 Cir., 193 F.2d 760; Hardwick v. Hurley, 7 Cir., 289 F.2d 529; Valle v. Stengel, 3 Cir., 176 F.2d 697; Selico v. Jackson, supra. There must, however, be an actual denial of due process before a cause of action arises. Jennings v. Nester, supra; Hanna v. Home Insurance Company, 5 Cir., 281 F.2d 298, cert. denied, 365 U.S. 838, 81 S.Ct. 751, 5 L.Ed.2d 747.

Some examples of actions taken under color of state law and held to be deprivations of rights guaranteed by the Constitution and laws of the United States are: (1) Illegal search and seizure, unlawful arrest and detention without a warrant or arraignment by local officers, Monroe v. Pape, supra; (2) illegal arrest and assault without cause resulting in death, Brazier v. Cherry, 5 Cir., 293 F.2d 401, cert. denied, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136; (3) illegal arrest and seizure, refusal to permit consultation with an attorney, physical abuse, incarceration in jail and refusal to inform the person as to what crime she was charged with committing, Davis v. Turner, 5 Cir., 197 F.2d 847; (4) apprehension by local officers of an individual who was badly beaten, intimidated and imprisoned by them without ever being taken before a committing magistrate or tribunal which would afford him due process of law, Koehler v. United States, 5 Cir., 189 F.2d 711, cert. denied, 342 U.S. 852, 72 S.Ct. 75, 96 L.Ed. 643 (Criminal prosecution under criminal civil rights statutes); (5) the use of threats, intimidation and questioning to force an individual accused of crime to change his plea of not guilty to guilty, Lewis v. Brautigam, 5 Cir., 227 F.2d 124, 55 A.L.R.2d 505; and (6) unlawful arrest and detention without preferring charges and providing urgently needed medical attention, Coleman v. Johnston, 7 Cir., 247 F.2d 273.

When the testimony adduced on behalf of the plaintiff is viewed together with the plain import of the Civil Rights Act and the foregoing settled legal principles under the Act, we conclude that the plaintiff made out a submissible case for the jury. It was a factual case to be resolved by the jury upon proper and adequate instructions and since no complaint is made here concerning the instructions, we need not pass upon them. From the evidence the jury could well determine that Stringer was arrested without probable cause; that excessive force was used in making the arrest; that his automobile was unlawfully seized; that he was denied the right to bail; and, by coercion, was denied the right to a trial, as to his guilt or innocence, and was compelled to enter a plea of guilty, all violative of due process. We further conclude that the court below erred in sustaining defendant's motion and the judgment on the first cause of action should be reinstated.

In further argument opposing the reinstatement of the judgment, appellee says that the verdicts rendered upon the two causes of action allowed a double recovery for bodily injuries. Except in cases in which punitive damages may be allowed, an injured party may recover damages only for the actual loss he suffered and no more; he is to be made whole, but not entitled to be put in a better condition than he would be in had the wrong not been committed. Missouri Pacific Railroad Company v. H. Rouw Company, 5 Cir., 258 F.2d 445, cert. denied 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302; 15 Am.Jur., Damages, § 13, pp. 402–404. After examining the court's instruction as to the measure of damages on the first cause,[5] and assuming that the jury followed the instruction, we agree with appellee. Although, we cannot ascertain what part of the verdict on the first cause

5. "  *   *   *  In assessing such damages, you shall take into consideration the physical and mental pain suffered by him prior to the trial of the case, if any, as shown by the evidence  *   *   *."

of action was awarded for personal injuries, we can look to the verdict on the second cause of action to determine the amount fixed by the jury as compensation for bodily injuries, as the entire amount of this verdict was for bodily injuries and resulting damages. Therefore, in reinstating the judgment on the first cause of action, that judgment should be reduced in the amount of recovery had on the second cause of action for compensatory damages.

Reversed and remanded with instructions to reinstate the judgment on the first cause of action in accordance herewith.