Stacy A. DOBSON, Appellant,

v.

Dale C. CAMERON, Superintendent, St. Elizabeths Hospital, Appellee.

Ronald STULTZ, Appellant,

v.

Dale C. CAMERON, Superintendent, St. Elizabeths Hospital, Appellee.

Nos. 20573, 20576.

United States Court of Appeals District of Columbia Circuit

Argued June 21, 1967.

Decided Sept. 1, 1967.

Mr. Michael Gottesman, Washington, D. C., with whom Mr. Charles Halpern, Washington, D. C. (both appointed by this court) was on the brief, for appellants. Mr. George H. Cohen, Washington, D. C. (appointed by this court) also entered an appearance for appellants.

Mr. Thomas Lumbard, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and William M. Cohen, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and DANAHER, BURGER, WRIGHT, McGOWAN, TAMM, LEVENTHAL and ROBINSON, Circuit Judges, sitting en banc.

PER CURIAM:

Appellants in these two cases are patients at St. Elizabeths under civil commitment. Each appeals from a dismissal by the District Court, after hearing, of his *habeas corpus* petition. We reverse and remand in each case for a new hearing before a different judge.

## No. 20,573

■ Appellant Dobson, in addition to claiming eligibility for immediate release—a question which was heard and decided adversely to him—raised a variety of other issues. The trial court did not regard any of these as justiciable. Since one of them was an alleged denial of the right to treatment, reversal and remand for a new hearing is required in any event.[1] 21 D.C.Code § 562 (Supp. V., 1966); and see Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451 (1966).

In such new hearing, we regard the issue of eligibility for release as also open for a fresh inquiry and determination, since we are not satisfied that its resolution was founded upon an adequate hearing. We do not address ourselves specifically to the matters referred to in Note 1, *supra*, since we are content to leave their disposition to the judge presiding at the new trial. We note only that some of them would appear to be intimately related to, and perhaps a part of, the central issue of the adequacy of treatment; and that, to the extent this is so, they are inevitably implicated in the trial of that issue.

■ It has been urged upon us in this appeal that the *habeas corpus* petition should not have been entertained at all, much less made the occasion of a hearing, because appellant did not first pursue the administrative remedy which Congress has expressly provided in 21 D.C. Code § 546 (Supp. V., 1966). This court has heretofore indicated its belief that such administrative procedures as are available should normally be exhausted before resort is had to the courts.[2] We reaffirm that belief most vigorously in this context of a civil commitment in respect of which there can be no question as to the Congressional purpose to afford an administrative avenue of relief as a preface to judicial consideration. The record before us is, however, unclear as to exactly what has happened in respect of the raising of this issue in the District Court or what the considerations are in respect of the withholding of judicial intervention at this advanced date in the history of this case. We have concluded, therefore, to leave the parties free on remand to take such action and to make such contentions on this point as they deem fit; and the District Court will, as it should be entitled to do, deal with the matter in the first instance.

## No. 20,576

■ In his *pro se* petition, appellant Stultz asserted only that he was being improperly held in the maximum security ward and should be tranferred to another place within the hospital. This issue, which the trial judge had not regarded as justiciable in *Dobson*, was nevertheless made the subject of an evidentiary hearing which ended with a ruling by the judge that, even though he had no juris-

1. The other issues included, in addition to treatment, alleged failures by appellee to discharge statutory obligations to keep records and to accord appellant proper communication with the outside world by telephone and mail; and they also extended to alleged non-statutory claims of undue restrictions of liberty, such as improper retention in the maximum security ward, arbitrary limitations upon visiting privileges, and unreasonable refusals to permit appellant to work outside the institution during the day.

2. In Rouse v. Cameron, *supra*, we said as follows:
   This requirement [the right to treatment] also suggests the appropriateness of administrative procedures for considering complaints alleging lack of treatment. These procedures would not only provide the Hospital an opportunity to afford a remedy, but would also provide a record which might assist in the disposition of any resulting litigation. And given "adequate and available" administrative procedures, it might be argued, although we do not decide, that the doctrines of primary jurisdiction and exhaustion of remedies would apply. See, e. g., Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–52 [58 S.Ct. 459, 82 L.Ed. 638] (1938); Sohm v. Fowler, 124 U.S.App. D.C. 382, 365 F.2d 915, decided June 16, 1966.
   125 U.S.App.D.C. at 371, 373 F.2d at 456 n. 22.

diction, he would deny the relief sought on the merits. Being unconvinced that, under these circumstances, there has been a meaningful hearing and resolution of the claim advanced, we reverse and remand for a new hearing.

On appeal it was alleged for the first time that there had been a denial of appellant's right to treatment. 21 D.C. Code § 546 (Supp. V., 1966); and see Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451 (1966). Our remand contemplates that this issue may be raised in the District Court if appellant so elects. With respect to the exhaustion of administrative remedies, we note that appellee's return to the writ appears to have raised this question, but that the writ was nonetheless directed to issue. We have suggested above in *Dobson* the substantiality we attribute to this question; and, as in our remand in that case, we direct that the parties shall be free upon this remand to take such action as they deem fit with respect to this issue, with the court making such disposition of it as it thinks warranted in the circumstances which obtain here.[3]

\* \* \*

The judgments are reversed and the cases remanded for further proceedings consistent herewith.

It is so ordered.

DANAHER, Circuit Judge [concurring in the result]:

I concur in the result but wish to submit a bit of background as a setting for my observations.

3. Because appellant Stultz appears to be complaining only of inadequate treatment (including detention in the maximum security ward) and not of his continuing hospitalization, it has been suggested that the administrative remedy of 21 D.C.Code § 546 is not available to him since it is directed in terms to the alternatives of immediate release and continued commitment. We do not now decide what the precise scope of the statute may be, inasmuch as the District Court should do that in the first instance on the basis of the contentions made to it and in the light of the facts of record before it. We note only that where, as in *Dobson*, release is sought

*No. 20573*

As the hearing opened counsel told the trial judge alternatively that Dobson was no longer mentally ill, or if he is that he is no longer dangerous to himself or others and should be released. In any event, he added, it is not necessary that he be retained in the John Howard Pavilion "which is the maximum security unit of the hospital" and that Dobson should "be permitted to enjoy the greater freedom and liberties which would result from being assigned to one of the less restrictive units of the hospital."

Thus the court was being asked to decide the legal status of Dobson via habeas corpus. After taking testimony the trial judge found that the petitioner is mentally ill, "suffering from Chronic Brain Syndrome Associated with Brain Trauma, Gross Force, with Psychotic Reaction in remission (Alcoholism) and would be likely to injure himself or others if not hospitalized." The trial judge concluded that Dobson is mentally ill, would be likely to injure himself or others if allowed to remain at liberty and that he had failed to sustain his burden of proving his eligibility for release.

Dobson in March 1963 filed his first petition for habeas corpus; his next, in June 1963; again in May 1964. Then later in June 1964 he filed a petition for writ of mandamus, and an almost identical petition of like nature in July 1964. August 12, 1965, he filed his fourth petition in habeas corpus, another August 25, 1965, with further petitions of one sort or other, December 15, 1965 and Decem-

simultaneously with treatment and other rights which assume continued confinement, these latter become moot if release is administratively forthcoming; and that, accordingly, it would be appropriate for a court at least to stay its consideration of these matters until exhaustion of the administrative remedy. We note also that a person situated as was Stultz might conceivably bring himself within § 546 by claiming entitlement to release unless his other rights are recognized. The objectives which Congress sought to serve by § 546 would ordinarily be farthest advanced by according to that statute a reading consistent in breadth with those objectives.

ber 21, 1965 before filing his sixth habeas petition in January 1966. Next followed a series of pleadings, February 11, 1966, February 25, 1966, another petition for habeas corpus in March 1966, followed by yet other documents in June 1966 and September 1966 while this case was pending. In case after case there were hearings, appointments of counsel, rulings by District Court judges, testimony by psychiatrists and others. The records show that he had broken into the hospital canteen, had stolen money, escaped from the hospital, charged the chief of the guards with forcing him to commit theft and various other derelictions.

### No. 20576

Stultz in 1955 had been found guilty of robbery, and while serving his sentence had been committed to St. Elizabeths as a prisoner who had become mentally ill. In 1960 the Commission on Mental Health reported to the court that Stultz was of unsound mind, and accordingly he was committed pursuant to D.C.CODE § 21–314. In January 1961, his condition at the hospital was diagnosed as schizophrenic reaction, paranoid type. His counsel informed the trial court that Stultz "doesn't feel he should have to continue to live with criminals at this time, and he says it hurts him mentally and physically to have to stay in that confinement." Psychiatric testimony developed that Stultz had complained "that people came and took him away from the hospital in the night and would at times even kill him and then bring him back just before the morning staff, the morning shift, came on the next morning." On numerous occasions without apparent reason, he had attacked another patient or a nursing assistant. He had even broken the nose of one of the patients.

Stultz filed a writ of habeas corpus in January 1959 which was dismissed after hearing, and leave to appeal having been denied by this court, certiorari was denied in May 1960, 362 U.S. 979, 80 S.Ct. 1065, 4 L.Ed.2d 1014. Thereafter he filed again in August 1960 and in June 1961. There were six separate filings in 1962; eight in 1963; at least ten proceedings in 1964; eight in 1965, five in 1966 and two in 1967. At least eleven different judges in the United States District Court, at one time or other, were engaged in hearing the various petitions submitted by Stultz.

Rouse [1] testified that he had been bestirred to seek release after reading a newspaper article concerning Cameron v. Mullen, (No. 20308 decided March 2, 1967). Counsel for Stultz told the trial court that he proceeded because of this court's opinion in Lake v. Cameron, 124 U.S.App.D.C. 264, 364 F.2d 657 (*en banc*, 1966). Just what actuated the 40-odd proceedings instituted by Dobson I will not undertake to say.

But I have said enough to justify my promise, *supra*, to submit a few comments. Posed as legal questions when properly they should be the subject of disposition by the discipline in which they arise, the various contentions urged upon the courts are limited only by the ingenuity of those who originate them. No doubt, they are encouraged, at least to some degree, by this court's preoccupation in recent years with problems arising in the field of mental health. But the situation presented on these records only emphasizes the inanity of a system which results in the presentation of such questions to the courts.

It may seem reasonable to suppose that sooner or later Congress will be moved to provide for the creation of an entity, some commission of experts,[2] whose duty it will be to give appropriate attention to questions, serious or trivial, involving mental patients, particularly those possessed of criminal propensities. I can

---

1. See Rouse v. Cameron, U.S.App.D.C. (No. 20962, 1967); and see Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451 (1966).

2. And surely judges do not so qualify.

only assume that the interests of such patients as well as of society will best be advanced through reference of all such problems to a competent body, trained for that duty and operating under authority adequate for the purpose. I am completely convinced that matters such as were here considered, *en banc,* should not be required to engage the time of the courts.[3]

As matters stand, all that is presently open to us is a remand that possibilities may be explored under D.C.CODE § 21–546 (Supp. V, 1966). I will not be surprised if Dobson shall "make such contentions" as he deems fit, or if Stultz shall "take such action" as his counsel may think appropriate. Thereafter, if recent cases supply any criteria, they will be back again asking the court to review what the District Judges shall have done that once more we may say, "That's not the way to do it." The truth is we do not know how to do it—but I think the staff at St. Elizabeths does know.

BURGER, Circuit Judge, (concurring):

I concur in the result reached in the majority opinion and in Judge Danaher's separate concurring opinion. I am constrained, however, to point out what I believe is an unfortunate shortcoming of the majority opinion.

The Court's opinion tends to gloss over the important distinction between civil commitment under the Hospitalization of the Mentally Ill Act, D.C.CODE § 21–501

*et seq.* (Supp. V 1966) and criminal commitment pursuant to a finding of not guilty by reason of insanity, D.C.CODE § 24–301 (1961). Some, but not all of the rights asserted in the instant cases are indeed articulated in the civil commitment statute. Whether or not they are cognizable in a judicial proceeding or enforceable by judicial procedures is a matter that the majority leaves open to be pursued on the remand, including the question of exhaustion of administrative remedies. But this result is not supported by reliance on the tortured construction placed on the civil commitment statute by the dictum contained in the majority opinion in Rouse v. Cameron, 125 U.S. App.D.C. 366, 373 F.2d 451 (1966), a *criminal* commitment case. The infirmities and dictum of the majority in the first *Rouse* opinion were pointed to by Judge Danaher in his dissent in that case.

True, the majority opinion here does not rely upon and indeed makes only a very limited and qualified reference ("and see") to the first *Rouse* opinion; but in light of our treatment of yet another action by Rouse today,[1] it seems clear now that the first *Rouse* opinion is largely dictum. I have grave doubts that we are qualified to oversee mental hospitals in cases of civil commitments but, at the least, there is some statutory basis on which it can be argued that Congress has conferred some power on us at least to inquire into civil commitment cases when it is alleged that one is being detained *without any* treatment.[2] As

---

3. Crime Commissions and public officers concerned with congestion in the courts need only examine the records in these cases to see what is happening to judicial time, not to mention the hours on end spent in court by St. Elizabeths staff who otherwise could be rendering the services their patients require.

1. Rouse v. Cameron, U.S.App.D.C. (No. 20962, decided today).

2. In Tribby v. Cameron, 126 U.S.App.D.C. —, 379 F.2d 104, (No. 20,454, decided April 14, 1967), Judge Edgerton made it clear that this Court was not embarking on a broad scale program to oversee mental institutions but rather confining

judicial review narrowly to whether there is a denial of *any* treatment:

> We do not suggest that the court should or can decide what particular treatment this patient requires. The court's function here resembles ours when we review agency action. We do not decide whether the agency has made the best decision, but only make sure that it has made *a permissible and reasonable decision* in view of the relevant information and within a broad range of discretion. (Emphasis added).

*Supra* at —, 379 F.2d at 105. That holding negates any notion of a sweep-

Judge Danaher cogently pointed out in Rouse v. Cameron, *supra*, Congress made a clear distinction between two different situations, 125 U.S.App.D.C. at 381–383 nn. 12–14, 373 F.2d at 466–468 nn. 12–14 (dissenting opinion). The blurring of these two unrelated types of commitment by the majority opinion here seems to me unfortunate.

TAMM, Circuit Judge, joins in the concurring opinions of Circuit Judge DANAHER and Circuit Judge BURGER.

ing judicial surveillance over the choice of therapy. In a psychiatic context, of course, therapy does not necessarily mean medication, "couch" interviews, group or occupational activities; therapy may consist simply of hospitalization to afford a protective environment or milieu therapy. Judicial consideration, therefore, would be largely limited to determining whether the choice of therapy was a conscious medical decision rather than neglect; obviously judges have no competence to evaluate the *quality* of a given choice of treatment.