A. J. BURNHAM et al., Plaintiffs,

v.

The DEPARTMENT OF PUBLIC HEALTH OF the STATE OF GEORGIA et al., Defendants.

Civ. A. No. 16385.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 4, 1972.

Thomas H. Harper, Jr., Atlanta, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Alfred L. Evans, Jr., Asst. Atty. Gen., Atlanta, Ga., for defendants.

ORDER ON MOTIONS TO DISMISS

SIDNEY O. SMITH, Jr., Chief Judge.

In this class action plaintiffs request injunctive and declaratory relief pursuant to the provisions of 42 U.S.C. §§ 1981, 1983 and 28 U.S.C. § 1343(3) &

(4). The parties-plaintiff, residents of Georgia, are all now or have been patients at one or more of the mental health institutions operated by the Department of Public Health of the State of Georgia (hereinafter "the Department"). The defendants are State officials responsible for the operation of such institutions, in varying degrees, and include the 18 member Board of Health which directs and controls the Department, the Director and Deputy Director of the Department, the Director of the Division of Mental Health and the Director of Institutions, Division of Mental Health. Also included as defendants are six superintendent/directors of individual institutions and two Judges of the Court of Ordinary.

The gravamen of the complaint is that the defendants are providing *constitutionally* inadequate diagnosis, care, and treatment to the plaintiffs and all those similarly situated. Additionally it is asserted that persons, as yet unknown, will be committed by the Judges of the Court of Ordinary to what amounts to penal or custodial status without the benefit of due process of law.[1]

The plaintiffs' prayer asks this Court to declare (1) that patients confined to any state-owned or operated hospital or facility utilized for the diagnosis, care and treatment of mentally ill or mentally retarded persons are *constitutionally* entitled to adequate and effective treatment and (2) that each of the six institutions named in the complaint is unfit to provide *constitutionally* adequate and effective treatment for patients confined therein. Further, plaintiffs urge this Court to order the appropriate parties-defendant to provide *constitutionally* adequate treatment for any patient confined to the six named institutions, or to any other state-owned or operated facility. Plaintiffs also seek an injunction (1) preventing the defendants from operating any of the six named institu-tions in a manner that does not conform to the *constitutionally* required standards for diagnosis, care and treatment of mentally ill or mentally retarded persons and (2) prohibiting the named Judges of the Court of Ordinary and "members of their class" from committing any person to any of the six named institutions or any other state-owned or operated facility until such time as such institution or facility has made provisions for *constitutionally* adequate diagnosis, care, and treatment of patients. Lastly, plaintiffs ask this Court to order the appropriate defendants to prepare a comprehensive, *constitutionally* acceptable plan to provide adequate and effective treatment for all patients confined to state mental health facilities.

Prior to an examination of this case on its merits this Court deems some preliminary discussion appropriate. This Court is understandably concerned with the condition of that lamentably increasing number of human beings confined to mental health institutions. Certainly on moral grounds the proposition that the nation's mentally ill should be provided the best possible diagnosis, care and treatment is commendable. As citizens, we should be proud of any efforts to so provide for the needs of our fellow man. Those efforts include the enactment in 1969 by the Georgia General Assembly of legislation that has been heralded as one of the most advanced statutory treatments of the subject of hospitalization of the mentally ill in this nation. *See* Ga.Laws 1969, pp. 505–545; Ga. Code Ann., Chap. 88–5. The commitment to progress in the area of care for the mentally ill in Georgia is reflected in the increase from approximately $13,000,000.00 in 1960 to the $90,000,000.00 level in 1972 of funds provided by the General Assembly for the care of the mentally ill. Efforts have also been undertaken to decentralize and establish regional hospitals throughout the State by means of an ex-

---

1. Plaintiffs do not directly or indirectly attack the commitment procedures of the State of Georgia. This particular asser-tion is nowhere explained or argued in plaintiffs' brief of law and argumentation.

tensive building program. Against this backdrop of effort, the Court considers the legal aspects of this matter.[2]

## JURISDICTION PURSUANT TO 28 U.S.C. § 1343

The defendants assert that the complaint should be dismissed for want of jurisdiction over the subject matter in that it fails to raise a substantial federal question.

The courts have generally taken the view that 42 U.S.C. § 1983[3] establishes the substantive right under which a complainant may proceed to vindicate a violation of his civil rights. Jurisdiction has been granted pursuant to 28 U.S.C. § 1343(3) to allow consideration of the alleged claim arising under 42 U.S.C. § 1983. Baldwin v. Morgan, 251 F.2d 780 (5th Cir. 1958). Germane to both 28 U.S.C. § 1343 and 42 U.S.C. § 1983 is the requirement that the conduct complained of be exercised "under color" of state law. The courts, when considering claims under the two aforementioned sections have established the following two prerequisites: (1) that the defendant(s) act "under color" of state or local law *and* (2) that the plaintiff be subjected to a deprivation of some rights, privileges, or immunities secured by the constitution and laws of the United States. United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Basista v. Weir, 340 F.2d 74 (3d Cir. 1965); Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963); Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962).

█ The plaintiffs' complaint in the instant case is predicated squarely upon the proposition that the "adequacy" of

the diagnosis, care, and treatment of patients in Georgia's mental health institutions is not merely a matter of State law[4] but is a *federal constitutional* issue. Indeed under the second prerequisite noted above the plaintiffs are required to show a deprivation of a *federal* right in order to invoke jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. This Court is in agreement with plaintiff's counsel when he states, "It is true that in dealing with this issue, we are somewhat in the forefront of the law . . ."[5] to the extent that a right to treatment for the mentally ill (if such a right indeed exists absent a statutory mandate) is a constitutionally required right.

As pointed out by the defendants, whether a State shall provide a particular governmental service, and if so in what amount (both qualitatively and quantitatively) are generally questions which address themselves exclusively to State law and do not raise federal constitutional issues. *See* Fullington v. Shea, 320 F.Supp. 500 (D.Colo.1970) (3 judge court), aff'd., 404 U.S. 963, 92 S.Ct. 345, 30 L.Ed.2d 282 (1970). *Cf.* McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). In the matter now before the Court there is a law of the State of Georgia which requires treatment of those individuals confined to the State's mental health institutions.[6] The argument herein is not that there is some sort of invidious discrimination based upon race or similarly prohibited criteria being practiced whereby an unequal distribution or application of the benefits of this State law is being rendered. Plaintiffs are directly challenging the "adequacy" of the treatment, care, and diagnosis being

---

2. This petition and the defendants' motion present novel questions of law. Counsel for both sides have submitted excellent presentations of their respective positions. They are to be commended for their efforts and assistance to the Court.

3. The jurisdictional considerations applicable to 42 U.S.C. § 1983 apply with equal force to 42 U.S.C. § 1981.

4. See Ga.Laws 1969, pp. 505–545, the majority of which is set forth in Chapter 88–5, Ga.Code Ann.

5. Brief of Plaintiffs in Opposition to Defendants' Motions to Dismiss, p. 3.

6. See Ga.Code Ann. § 88–502.2.

provided in the State's mental health institutions.[7]

The plaintiffs urge this Court, therefore, to declare the existence of a *federal constitutional* right to treatment (to encompass "care" and "diagnosis") for the mentally ill and to define the same. This Court can find no legal precedent for such a declaration and to the contrary finds persuasive authority compelling an opposite conclusion.[8]

The leading exponent of the declaration of a right to treatment for the mentally ill is Morton Birnbaum, M.D., LL.B., who for the past fifteen years has written a number of articles on the subject and has been instrumental in "law reform" litigation. Dr. Birnbaum himself has conceded that while such a right to treatment has been accepted by society, it has not been recognized as a federal constitutional right.[9]

██ Not every governmental function results in an individual right. See Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951); Niklaus v. Simmons, 196 F.Supp. 691 (D.Neb. 1961). Looking at an analogous area of recent great societal concern and importance, education, we find some instructive authority. In Flemming v. Adams, 377 F.2d 975, 977 (10th Cir. 1967), cert. denied, 389 U.S. 898, 88 S.Ct. 219, 19 L.Ed.2d 216 (1967), a claim that the right to a public education was secured by the United States Constitution was rejected as follows:

"Although the importance of education to our democratic society is obvious to all . . . we do not agree that the right to an education is

among those rights guaranteed by the federal constitution."

*See* Peacock v. Riggsbee, 309 F.Supp. 542 (N.D.Ga.1970). While the 14th Amendment guarantees equal protection of the laws, it does not create any new rights in itself.

With the exception of a recent Alabama decision discussed hereinbelow, the courts have not gone beyond recognizing a *statutory* right to treatment in those jurisdictions where such a right exists. The Court of Appeals for the District of Columbia, in a series of split decisions, has held that under federal statutes regulating the hospitalization of the mentally ill in Washington, D.C., (tantamount to state laws in the District) patients there can obtain judicial review of the adequacy of their treatment, including the question of whether the least restrictive course of treatment available is being utilized. *See* Covington v. Harris, 136 U.S.App.D.C. 35, 419 F.2d 617 (1969); Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451 (1967); Lake v. Cameron, 124 U.S.App.D.C. 264, 364 F.2d 657 (1966).

Chief Judge Bazelon indicates by way of dicta in Rouse v. Cameron, *supra*, that the lack of psychiatric treatment beyond custodial care raises serious constitutional questions. These "constitutional questions" were not reached due to the finding of the court that Congress had provided for a *statutory* right to treatment (D.C.Code § 21–562, Supp. V, 1966). *See* Rouse v. Cameron, *supra* at 453. *Rouse* arose on a petition for habeas corpus challenging involuntary confinement in a mental hospital on

7. Plaintiffs do not assert that "treatment" is not being provided in the Georgia mental health facilities, but that the "adequacy" (i. e. quality, quantity, individualization, and level) of treatment is deficient and that said "adequate treatment" is mandated by the constitution of the United States. There does exist a dispute between counsel as to whether mere custodial care constitutes "treatment" (as required by the State law). That issue is more appropriately for the courts of Georgia to resolve. See City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S.

639, 640–641, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959).

8. For a comprehensive discussion of the "right to treatment" for the mentally ill, see Symposium: The Right to Treatment, 57 Georgetown L.J. 673 (1969).

9. See Birnbaum, "The Right to Treatment—Some Comments on Certain Legal Developments" (Statement of November 4, 1969 before the Subcommittee on Constitutional Rights, Committee on the Judiciary, United States Senate).

being automatically committed under a D.C. statute providing for same on being acquitted of an offense by reason of insanity. *See* Dobson v. Cameron, 127 U. S.App.D.C. 324, 383 F.2d 519, 523 (1967) (concurring opinion). Moreover, the majority opinion stressed that, "The purpose of involuntary hospitalization is treatment, not punishment." Rouse v. Cameron, *supra* at 452.

It is important to note that an articulate minority of the District of Columbia Court of Appeals does not agree that the *statute* makes it proper for courts to go into such matters of "adequacy" and the evaluation of alternative courses of treatment. Judge Warren Burger stated in Lake v. Cameron, *supra* at 663:

". . . this Court now orders the District Court to perform functions normally reserved to social agencies by commanding search for a judicially approved course of treatment or custodial care for this mentally ill person who is plainly unable to care for herself. Neither this Court nor the District Court is equipped to carry out the broad geriatric inquiry proposed or to resolve the social and economic issues involved."

*See also* Dobson v. Cameron, 127 U.S. App.D.C. 324, 383 F.2d 519, 523 (1967).

In the instant case we are presented with no *federal* statute mandating treatment as was the basis for relief in the District of Columbia cases cited hereinabove. What we do have is simply a *Georgia* statute which provides:

"Right to care and treatment.—The policy of the State is that no person shall be denied care and treatment for mental disorder, and no services shall be delayed at a facility of the State or a political subdivision of the State be-

cause of inability to pay." Ga.Code § 88–502.2.

Even the Georgia act differs from the District of Columbia act in that the Court in Rouse v. Cameron, *supra*, construed that statute to predicate involuntary confinement solely on the premise that treatment would be afforded. This Georgia law, however, recognizes other grounds for involuntary committal:

"Criteria for nonobjecting or involuntary hospitalization.—A person being within the State may be hospitalized under sections 88–506.2 through 88–506.7 if he is mentally ill and is (a) *likely to injure himself or others if not hospitalized* or (b) incapable of caring for his physical health and safety." [Emphasis added] Ga.Code § 88–506.1.[10]

■ This Court is of the opinion that plaintiffs have failed to demonstrate or sufficiently allege the deprivation of a *federally* protected right. Since plaintiffs have not been deprived of any federal right, they cannot maintain this action pursuant to 42 U.S.C. §§ 1981, 1983 and 28 U.S.C. § 1343(3) & (4). *See* City of Greenwood, Miss. v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); Basista v. Weir, 340 F.2d 74 (3d Cir. 1965); Stringer v. Dilger, 313 F.2d 536 10th Cir. 1963); Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962).

This Court takes notice of Chief Judge Johnson's rulings in the Middle District of Alabama. *See* Wyatt v. Stickney, 334 F.Supp. 1341 (M.D.Ala. 1971); Wyatt v. Stickney, 325 F.Supp. 781 (M.D.Ala.1971). This Court respectfully disagrees with the conclusion reached by that court in finding an affirmative federal right to treatment absent a statute so requiring. Judge

---

10. Plaintiffs' counsel asserts that he "cannot believe that defendants' counsel is serious in his discussion . . . about the justification for civil commitment being primarily avoidance of injury to themselves and others. If this were so there would be no need to even amuse ourselves with the little game of calling these institutions hospitals." Apparently plaintiffs' counsel believes that the *sole* justification for confining mentally ill individuals is to treat them. While this is perhaps a noble, even desirable, viewpoint it totally ignores the realities of the situation. Those realities are reflected in the same Georgia law that in fact provides for a right to treatment but predicates the attendant confinement on the basis of protection of society and protection of the individual from himself and others.

Johnson relied solely for authority on Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451 (1967) and Covington v. Harris, 136 U.S.App.D.C. 35, 419 F.2d 617 (1969) both of which were predicated upon the local District of Columbia statute. The factual context in those Alabama decisions (budgetary cuts by the State legislature causing further deterioration of an existing deficient institutional environment) is also substantially different from the existent situation in the Georgia mental health institutions.

## LACK OF JURISDICTION COMPELLED BY ELEVENTH AMENDMENT

Plaintiffs correctly argue that suits against State officials to enjoin them from invading constitutional rights are not forbidden by the Eleventh Amendment. *See* Griffin v. County School Board of Prince Edward County, 377 U. S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). The Court is also aware that States have been forced to assume financial burdens in other cases involving the deprivation of constitutionally protected rights. *See* Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Plaquemines Parish School Board v. United States, 415 F.2d 817 (5 Cir., 1969). However, in the instant case there has been no showing of a denial of a *constitutionally* protected right nor a *federally* guaranteed statutory right.

In the case at bar the Court will not require the State of Georgia to expend additional revenues for the diagnosis, care, and treatment of patients in its mental health institutions, said treatment and care being mandated by *State* law. To place such a requirement upon the State, under the circumstances wherein citizens of the State have brought action in federal court, would be in contravention of the Eleventh Amendment to the United States Constitution. *See* Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Worchester County Trust Co. v. Riley, Controller of California, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268 (1937); Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887); Scott v. Board of Supervisors of Louisiana State Univ., 336 F.2d 557 (5th Cir. 1964). For the above-stated reason this Court finds that a conclusion as to the lack of jurisdiction over the person of named defendants is also compelled by the Eleventh Amendment to the United States Constitution.

## FAILURE TO PRESENT A JUSTICIABLE ISSUE

The question of justiciability has two facets. "First, we must decide whether the claim presented and the relief sought are of the type which admit of judicial resolution." Powell v. McCormack, 395 U.S. 486, 23 L.Ed.2d 491, 516–517, 89 S.Ct. 1944, 1961 (1969). That is, the Court must determine whether "the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." Baker v. Carr, 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). Secondly, justiciability requires a determination of whether the structure of the Federal Government renders the issue presented a "political question".

For the purposes of this case the Court will focus its inquiry into whether the plaintiffs' claim and requested relief provide such reasonably specific, judicially ascertainable and manageable standards as are required for a controversy to be justiciable within the context of the above definition.

Plaintiffs' basic claim is that mental health patients are constitutionally entitled to something more than custodial care and treatment. Plaintiffs assert that said patients are entitled to "adequate and effective treatment", "constitutionally adequate treatment" or ade-

quate "diagnosis, care and treatment." This Court must therefore determine whether "adequate and effective treatment", "constitutionally adequate treatment", and adequate "diagnosis, care and treatment" can "be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded". Baker v. Carr, *supra* at 198, 82 S.Ct. at 700. No simple solution to such a task is available, hence the need for the following analysis.

■ Common to each of the plaintiffs' characterizations of the alleged "right" involved is the word "treatment". The dictionary provides meager assistance to the Court in attempting to "judicially identify" the duty asserted or "judicially define" what the breach of that duty would be, to wit:

"treatment: 1. the action or manner of treating as:

a: conduct or behavior towards another party . . . b: the action or manner of treating a patient medically or surgically."

Webster's Third New International Dictionary (unabridged 1961).

Experts in the field of mental illness are also of little help other than in providing analogous terminology, e. g. "therapy". Defendants cite the following comments by Dr. Thomas S. Szasz (Professor of Psychiatry, State Univ. of N.Y.) in his article "The Right to Psychiatric Treatment: Rhetoric and Reality", 57 Georgetown Law Journal 740, 741 (1969) as indicative of the problem:

"Levine [M. Levine, Psychotherapy in Medical Practice 17–19 (1942)] lists 40 methods of psychotherapy. Among these, he includes physical treatment, medicinal treatment, reassurance, authoritative firmness, hospitalization, ignoring of certain symptoms and attitudes, satisfaction of neurotic needs and bibliotherapy. In addition, there are physical methods of psychiatric therapy, such as the prescription of sedatives and tranquilizers, the induction of convulsions by drugs and electricity, and brain surgery. *Obviously, the term 'psychiatric treatment' covers everything that may be done under medical auspices—and more.*

If mental treatment is all the things Levine and others tell us it is, how are we to determine whether or not patients in mental hospitals receive adequate amounts of it?" [Emphasis added]

In Greenwood v. United States, 350 U.S. 366, 375, 76 S.Ct. 410, 415, 100 L.Ed. 412 (1956), the Supreme Court also noted the transiency of the field when reviewing the testimony of two court-appointed psychiatrists, declaring:

". . . their testimony illustrates the uncertainty of diagnosis in this field and the tentativeness of professional judgment. The only certain thing that can be said about the present state of knowledge and therapy regarding mental disease is that science has not reached finality of judgment. . . ."

The addition of qualifying and modifying language such as "adequate" or "constitutionally adequate" to a word of uncertain meaning like "treatment" does nothing to clarify the confusion but serves only to compound it. It is therefore the opinion of this Court that the claimed "duty" (i. e. to "adequately" or "constitutionally treat") defies judicial identity and therefore prohibits its breach from being judicially defined.[11] The problem of mental illness is a matter of urgent social concern. The members of the community should be made aware of the existent problems and should work through their elected repre-

11. Plaintiffs' counsel asserts in brief of law: "Plaintiffs believe that the custodial care that exists will be found to be the result of the 'justiciable issue' of inaction after incarceration on the part of the State officials". Such "justiciable issues" would more appropriably be raised in an action in State court under the applicable Georgia law. (Right to treatment.—Ga.Code Ann. § 88–502.2; –502.3; Medical malpractice—Ga.Code Ann. § 84–924.)

sentatives to solve those problems. This Court, however, is not the appropriate vehicle for the stimulation of public awareness. In attempting to grapple with issues beyond the pale of judicial definition and resolution the Court renders a disservice to the community and stifles the needed creative and imaginative efforts of its concerned individual citizens.

## ADEQUATE REMEDIES AT LAW AVAILABLE TO PLAINTIFFS

■ The resolution of this issue involves a consideration of additional conflicting positions arising in the respective arguments of counsel. It is the opinion of this Court that there exists multiple adequate remedies at law available to the plaintiffs on an *individual* basis through which redress may be obtained. In such a situation the prayer for injunctive relief must be denied and the claim dismissed. *See* Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *cf.* Carson v. City of Fort Lauderdale, 293 F.2d 337 (5th Cir. 1961).

■ Plaintiffs state that a class action procedure is unavailable under Georgia law since the analogous federal rule (Rule 23, F.R.Civ.P.) has a subsection (3) under Rule 23(a) whereas the Georgia law does not. However, the Supreme Court of Georgia in Georgia Investment Co. d/b/a Dixie Loan Co. v. Norman, 229 Ga. 160, 190 S.E.2d 48 decided May 3, 1972, has declared that under section 23 of the Civil Practice Act (Ga.Code Ann. § 81A–123), a class action may be filed where the character of the right sought to be enforced is common, although such right is neither joint, nor derivative, nor several and the object of the litigation is not the adjudication of claims which do or may affect specific property involved in the action. Plaintiffs assert that the remedies of habeas corpus, medical malpractice, and ordinary tort actions would not function to provide an adequate remedy in that

the wrong sought to be remedied affects the system of care and treatment as a whole and not on an individual basis; that individual action could not affect the entire scheme of treatment. The Court finds such a description inconsistent with plaintiffs argument that each individual patient should have his particular therapy or treatment personalized. The Court believes that any meaningful attempt to ascertain whether "treatment" or "adequate care and treatment" is being afforded patients is best determined by the courts of the State of Georgia applying the applicable State law on an individual basis.[12] As argued by defendants, ". . . [T]he question of what in detail constitutes 'adequate treatment' is simply not capable of being spelled out as a mathematical formula which could be applied to and would be beneficial for all patients. Everyone knows that what might be good treatment for one patient could be bad or even fatal for another."

■ Since each patient is an individual and what is good treatment for one might mean disaster for another, the only feasible way in which the adequacy of treatment could ever be measured is against the needs of a particular patient. Under these circumstances it is the opinion of this Court that the class action requisites of Rule 23 are not met in that (1) there would be relatively few questions of law or fact common to members of the alleged class, (2) the claims of the plaintiffs would not be typical of the claims of the class, and (3) plaintiffs are not necessarily representative of or in a position to adequately protect the interests of the class. *See* Hamer v. Campbell, 358 F.2d 215 (5th Cir. 1966); Wilson v. Kelley, 294 F.Supp. 1005 (N. D.Ga.1968), aff'd, 393 U.S. 266, 89 S.Ct. 477, 21 L.Ed.2d 425 (1968).

The Court is persuaded that some matters are left for legislative and executive resolution short of federal judicial review. All too often, an instance of judicial overreach can result in a reduction

---

12. This is assuming the State courts can define "treatment" and determine its adequacy as mandated by Ga.Code Ann. § 88–502.2; –502.3.

of government services to a minimal level for fear of subsequent accountability for some innovative beneficial program. The rigidity of the court process can often stifle intelligent experimentation in dealing effectively with social problems, often to the ultimate detriment of the very persons for whose benefit the litigation is commenced. It is beyond the technical expertise of this, and presumably most, judges to endeavor to administer a state-wide mental health program and its direction is best left to the enlightened direction of the elected representatives of the people. It is true that federal courts have been drawn into administrative rules in other areas, the worth of which efforts have ultimately to be judged. However, in those instances it has followed the clear mandate of the Congress or the clear declaration of a federal constitutional right by our highest court, neither of which is present here.

For the reasons stated, the motion to dismiss must be granted and the petition is, therefore, dismissed.

It is so ordered.