William **JOHNSON**, by his conservator **Richard Johnson**, on his own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

Terry **BRELJE**, Superintendent of Chester Mental Health Center; Robert deVito, Director of Illinois Department of Mental Health and Developmental Disabilities, Defendants.

No. 78 C 1704.

United States District Court, N. D. Illinois, E. D.

Nov. 6, 1979.

122

Susan M. Sitter, Maywood, Ill., Thomas Grippando, Edward Beis, Chicago, Ill., for plaintiffs.

William J. Scott, Atty. Gen., Maureen D. Mudron, Sp. Asst. Atty. Gen., Christine A. Bremer, Staff Atty., Alan E. Grischke, Sp. Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The named plaintiff, William Johnson, has brought this action under 42 U.S.C. § 1983 and various state law provisions, alleging the illegality of the procedure by which he was assigned to the mental health facility at Chester as well as the living conditions at that hospital. By this motion, plaintiff seeks to have the suit certified as a class action under Fed.R.Civ.Pro. 23(b)(2). In addition to determining the appropriateness of this action under Rule 23(b)(2), the Court must consider whether the proposed class is a proper one and whether the four requirements of Rule 23(a) have been satisfied.

### Definition of the Class

[1] With respect to Count I, the plaintiff seeks to certify a class "of all male persons who have been and/or may be hospitalized pursuant to the Illinois Mental Health Code after being found not fit to stand trial by an Illinois court and solely because of said finding are transferred to Chester Mental Health Center." In Count II, he asks for certification of a class of all persons "who are/or will be found to be unfit to stand trial and to be in need of mental treatment, and are or will be hospitalized in facilities of the Illinois Department of Mental Health and Developmental Disabilities." The Court finds that these proposed class definitions are sufficiently definite for the purposes of Rule 23. The fact that the classes may include persons who are not identifiable at the present, or that class membership may change by the end of the trial, is no impediment to the certification of these classes. *Baird v. Lynch*, 390 F.Supp. 740, 746 (W.D.Wis.1974). Moreover, Johnson, the named party, clearly is a member of the classes which he proposes to represent. *Baird v. Lynch, Id.*

The Court now will examine these classes in light of the requirements of Rule 23(a) and 23(b)(2).

### Impracticability of Joinder

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all its members would be imprudent. The burden of proving numerosity rests with the party who seeks class certification. *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976). Although there is no hard and fast rule as to when the size of a class renders joinder impracticable, plaintiff's allegation that the classes include hundreds of persons—an allegation that is uncontroverted by the defendants—is enough to satisfy this requirement.[1] An attempt to join so many persons in one proceeding no doubt "would stretch the facilities and abilities of this Court beyond their elastic limit." *Cullen v. United States*, 372 F.Supp. 441, 447 (N.D.Ill.1974).

### Common Questions of Law and Fact

The second requirement of Rule 23(a) is the existence of "questions of law or fact common to the class." Fed.R.Civ.Pro. 23(a)(2). This aspect of Rule 23 clearly is satisfied. It is alleged that all the class members are victims of various discriminatory and otherwise illegal policies of the defendants: (1) the transfer without notice and hearing; (2) assignment to a high-security facility as a result of improper classifications based on sex and charges of criminality; (3) due process violations stemming

---

1. It is true that conclusory allegations of numerosity will not satisfy 23(a)(1). In *Valentino v. Howlett*, 528 F.2d 975 (7th Cir. 1976), the court held that a statement alleging that numerosity "appears more fully from the allegations of the complaint" failed to meet the Rule 23(a)(1) test. The Court explained that "[t]he trouble is that we are not given any figures to justify the assertion that the class is so numerous that joinder is impracticable nor are we furnished any basis upon which to take judicial notice of the numbers involved." *Id.* at 978 n.3. Although the plaintiff herein does not specify the precise number of persons in his classes, his allegations do give the court a basis upon which to determine the impracticability of joinder.

from certain conditions at Chester; and (4) equal protection violations resulting from blanket denials of temporary off-grounds passes to those unfit for trial; and (5) equal protection violations resulting from the failure to evaluate annually the continued need for hospitalization of those who are unfit to stand trial. These claims possess commonality sufficient for the purposes of Rule 23(a)(2). Wright & Miller, Federal Practice and Procedure: Civil § 1763, at 609.

### Typical Claims

Rule 23(a)(3) states that the claims of the representative party must be typical of those of the rest of the class members. Although there has been some confusion over what this rule requires, it seems evident that its purpose is to ensure that the representative has no claims that would place him in conflict with the interests of the class he purports to represent. *Cullen v. United States*, 372 F.Supp. 441, 447 (N.D. Ill.1974). In opposing the motion to certify, the defendants argue that with respect to Count I the plaintiff has failed to meet this requirement. Defendants' position is based on the fact that Johnson, the named representative, was transferred to Chester, whereas the class he wishes to certify includes persons *ab initio* assigned as well as transferred to the facility at Chester.

The Court agrees that properly construed, the class defined in Count I includes two subclasses; one of transferred patients and one consisting of those assigned to Chester *ab initio*. The Court disagrees, however, with the conclusion that this renders Johnson's interests antagonistic to those of the class so as to preclude certification. The only federal claim that differentiates patients who were transferred from those who were assigned to Chester initially is the alleged procedural due process violation relating to notice and hearing.[2] In all other respects, the claims among the two subclasses are the same. If this were a case in which the representative had fewer

claims than the class he sought to represent, the Court at the very least would narrow the requested class so that the claims would be typical. *See Swain v. Brinegar*, 517 F.2d 766, 780 (7th Cir. 1975); *Metropolitan Area Housing Alliance v. United States Dept. of Housing and Urban Development*, 69 F.R.D. 633, 638 n.7 (N.D.Ill.1976). In this case, however, the named representative's claims include all those that could be asserted by persons who were assigned to Chester immediately upon commitment. Thus, the Court concludes that the proposed classes satisfy the requirements of Rule 23(a)(3).

### Adequacy of Representation by Named Plaintiff

Finally, Rule 23(a)(4) requires that the Court determine whether the named representative will adequately and fairly protect the interests of the class. Since the class members in a Rule 23(b)(1) or 23(b)(2) class action will be bound by the result therein, it is critical that the Court be satisfied that the named plaintiff will provide adequate representation. This requires not only that the interests of the representative be harmonious with those of the class at large, but also that the representative is competent to conduct the proposed litigation. *Cullen v. United States*, 372 F.Supp. 441, 448 (N.D.Ill.1974).

There is no suggestion that counsel for the plaintiff are not capable of handling this action. Nor is there any reason to doubt that the named plaintiff will litigate this action vigorously, since he remains involuntarily hospitalized and subject to the same conditions as the others in his class.

Defendants, however, do assert that with respect to Count II Johnson is not in a position to protect the interests of the class members for the reason that the very nature of the claims involved makes it inappropriate to try the case as a class action. They argue that since the treatment appropriate to mental patients varies from individual to individual, it is impossible for the

2. Of course, these subclasses also will have different state law claims. For example, the patients assigned to Chester immediately upon their civil commitment will not have a claim for transfer in violation of Ill.Ann.Stats., ch. 91½

§ 3–908 (Smith-Hurd) (1979). Nevertheless, for the reasons discussed above, the Court does not consider these differences fatal to class certification.

named plaintiff to protect the class members' interest in adequate treatment. In support of this argument, they cite *Burnham v. Department of Public Health*, 349 F.Supp. 1335, 1343 (N.D.Ga.1972).

In *Burnham*, however, the plaintiffs challenged the individual therapy programs for patients as inadequate. The claims in this case do not require that the Court become enmeshed in determining the appropriate program of treatment for patients at Chester. Rather, the plaintiff asks only that the Court determine whether the blanket refusal to grant off-grounds passes and to evaluate annually the condition of class members is illegal. *Doe v. Mundy*, 514 F.2d 1179 (7th Cir. 1975), presented an analogous situation. There, the plaintiffs alleged that a Wisconsin statute permitting hospitals to refuse to perform elective abortions was unconstitutional. The district court had denied class certification on the ground that the named plaintiff could not represent the interests of the purported class. In reversing this decision, the Appeals Court observed that

> the hospital turned her away, not for any medical reasons, but because it did not perform elective abortions. Her need to be examined to determine whether she needed a therapeutic abortion or was physically able to have an elective abortion at a public hospital gave her the requisite common interest necessary to permit her to adequately represent the class.

514 F.2d at 1182.

Similarly, off-grounds passes and annual evaluations allegedly are denied to class members not for medical reasons, but because of departmental policy. Thus, under the reasoning in *Doe*, it is this refusal that gives the named plaintiff a commonality of interest with the class he seeks to represent sufficient to satisfy the requirements of Rule 23(a)(4).

For these reasons, the Court finds that the named plaintiff will fairly and adequately represent the interests of the class.

### The Requirements of Rule 23(b)(2)

Under this provision, a class action may be maintained if the elements of Rule 23(a)

are satisfied, and the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ. Pro. 23(b)(2). The allegations of the complaint plainly set forth behavior by the defendants that affects all of the class members. Moreover, certification under Rule 23(b)(2) is particularly appropriate in class actions brought to vindicate the plaintiffs' civil or constitutional rights. *Fujishima v. Board of Education*, 460 F.2d 1355, 1360 (7th Cir. 1972). The fact that the plaintiffs seek some monetary relief does not bar certification under Rule 23(b)(2), since the primary relief sought is injunctive. *Rodriguez v. Swank*, 318 F.Supp. 289, 295 (N.D. Ill.1970), aff'd, 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971).

Accordingly, the Court finds that this suit should proceed as a class action, with the certified classes defined pursuant to the discussion above. It is so ordered.