**Richard H. JONES, Jr., Plaintiff,**

v.

**J. T. WILLINGHAM, Warden, United State Penitentiary, Leavenworth, Kansas, Defendant.**

**No. T–3252.**

United States District Court
D. Kansas.

Nov. 5, 1965.

Willard L. Phillips, McAnany, Van Cleave & Phillips, Kansas City, Kan., for plaintiff.

Benjamin E. Franklin, Asst. U. S. Atty., Topeka, Kan., and Clair Cripe, Legal Department, Bureau of Prisons, Washington, D. C., for defendant.

ARTHUR J. STANLEY, Jr., Chief Judge.

The plaintiff, an inmate of the United States Penitentiary at Leavenworth, Kansas, was permitted to file this action in forma pauperis. He alleges that solely because of his membership in the Nation of Islam, commonly called Black

Muslims, he has been subjected to punishment and deprivation of privileges accorded adherents of other religious faiths; that he and inmates of like persuasion have been denied the right to assemble for worship, to receive religious instructions from Muslim ministers, and to receive literature published by the Nation of Islam. He seeks injunctive relief.

Under the provision of 28 U.S.C.A. § 1915(d), this court requested that Mr. Willard L. Phillips serve as the plaintiff's attorney. Mr. Phillips has accepted that responsibility, and has acted throughout the case as the plaintiff's attorney. Both parties have made extensive use of discovery procedures. A pretrial conference, with the plaintiff present in person and by counsel, resulted in the entry of a pretrial order which so simplified the issues as to leave only the following for determination by the court: "(W)hether the actions of the defendant, restricting the activities of the plaintiff, under the circumstances, including the claimed violation of constitutional rights, under the First, Eighth and Fourteenth Amendments, and of statutory rights, under the federal Civil Rights statutes [28 U.S.C.A. § 1343(3), and 42 U.S.C.A. § 1981 et seq.], exceeded the authority granted by law to the defendant to maintain security and discipline within the penitentiary, and therefore were subject to review by the courts."

It has been agreed by the defendant "that the assertion that the Nation of Islam is a religion will not be contested in the case, so that the Court may assume, for purposes of this case only in order to reach the issue of the cases, that it is a religion, and that this plaintiff is a member of said religion for purposes of this case."

The record is quite voluminous. The transcript of the testimony consists of 489 pages, and numerous exhibits were received. Two ministers of the Nation of Islam, Minister Clyde X. Jones and Minister James Shabazz, the first from the Mosque located in Kansas City, Missouri and the latter being the minister of Mosque No. 2 in Chicago, testified on behalf of the plaintiff, permission having been granted by Messenger Elijah Muhammad, the head of the Nation of Islam. Mr. Sanger B. Powers, a qualified penologist and Director of the Division of Corrections of the State of Wisconsin, was a witness for the defendant.

The defendant admits that under his administration, as well as under that of his predecessor, Warden J. C. Taylor, Black Muslim inmates are not permitted to meet together as such; that ministers of the Nation of Islam are not permitted to enter the penitentiary to preach to the Black Muslim inmates; that the right of individual Black Muslims "to have spiritual consultation" with ministers of the Muslim faith is restricted; and that no minister of the Nation of Islam is on the staff of the institution, although a Roman Catholic and a Protestant chaplain are provided.

■■ Imprisonment carries with it many restrictions. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). "A prisoner has only such rights as can be exercised without impairing the requirements of prison discipline." Sostre v. McGinnis, 334 F.2d 906, 908 (2d Cir. 1964), cert. denied, 379 U.S. 892, 85 S.Ct. 168, 13 L.Ed.2d 96 (1964). "(E)xcept in extreme cases, the courts will not interfere with the conduct of a prison, with the enforcement of its rules and regulations, or its discipline * * *." Childs v. Pegelow, 321 F.2d 487, 491 (4th Cir. 1963), cert. denied, 376 U.S. 932, 84 S.Ct. 702, 11 L.Ed.2d 652 (1964). One committed to prison, however, does not on entering the place of his confinement leave his constitutional rights at the gates. Pierce v. La Vallee, 293 F.2d 233 (2d Cir. 1961). The issue

here may be stated as it was in the Pierce case:

"* * * Either the plaintiffs were punished solely because of their religious beliefs or they were not. If they were, the defendant's conduct violates * * * the United States Constitution. If the plaintiffs were punished for legitimate reasons, * * * [the] law is [not] violated." l. c. 235–236.

The defendant, like others charged by the Attorney General with administering the federal penal system, has the duty and responsibility not only to confine those charged to his keeping, but also to "provide for their proper government, discipline, treatment, care, rehabilitation, and reformation." 18 U.S.C.A. § 4001. This responsibility extends, of course, to the entire prison population without regard to race, citizenship, color or faith.

■ Leavenworth penitentiary is a maximum security prison. The inmate population is more than 2,200, about 22% Negro. The prison is completely integrated racially. Since the abandonment of Alcatraz, it, with Atlanta, has become "the end of the road" for federal prisoners, most of them recidivists and many with long sentences. In such an institution disciplinary problems are multiplied, yet discipline must be maintained. It can be assumed that those incarcerated are not completely happy with their lot, and that the frustrations of many and the hopelessness of some necessarily build up a powder keg situation easily touched off by an untoward incident.

The defendant and his predecessor were fully aware of the danger inherent in any behavior which might trigger violent reaction among the inmates. Both the defendant and Warden Taylor are men of long experience in the federal penal system. They are familiar with incidents at other penal institutions which were ascribed to the activities of Black Muslims. The evidence established that riots followed meetings of Black Muslims at Lorton Reformatory presided over by Ministers Lucius X. Brown (acknowledged by Ministers

Jones and Shabazz to be an accredited minister of the Nation of Islam); that Minister Lonny 3X (also identified by the plaintiff's witnesses as an accredited minister of the Nation of Islam) had, at meetings at Lorton, expounded the teachings of Elijah Muhammad as including the thesis that white men were devils, snakes, and descendants of dogs; and that the Black Muslim inmates at Lorton were exhorted to hate white men. Both of the wardens knew that Black Muslim inmates at Leavenworth and at other penal and correctional institutions tend to form themselves into cohesive, disciplined groups, taught to come to the defense of other Black Muslims and to demand equal punishment with a brother Muslim who might be disciplined. Both wardens knew that Honorable Elijah Muhammad in his official publication, "Muhammad Speaks," advocates the establishment of a separate state, to be peopled by Black Muslims, and demands "freedom for all believers of Islam now held in federal prisons." (Exhibit J.)

Until July, 1961, Black Muslim inmates at Leavenworth were permitted to congregate in groups in the recreation yard. During that month it was observed that in such a group one of their number was instructing the others in judo and karate, while some, designated as sentries, were posted to prevent other inmates from approaching. The instructor, Isaac Andrews, was placed on report and, after appearance before the prison disciplinary board, was placed in segregation. A group of the Black Muslim inmates then appeared at the isolation unit where Andrews was held and demanded that they be confined with Andrews.

The defendant, while warden at the United States Penitentiary at Lewisburg, Pennsylvania, and at the United States Penitentiary at Marion, Illinois, had himself observed instances of mass disobedience of the orders of custodial officers by Black Muslim inmates. On the basis of his own observations and his knowledge of the experiences at other institutions, each warden formed the opinion

**794**

that assemblies of more than five or six Black Muslim inmates led to incidents disruptive of discipline and proper administration of the institution. Under these circumstances, and in fulfillment of his responsibility to the public and to the non-Muslim inmates, the defendant not only was fully justified in imposing on the plaintiff and others professing Muslim beliefs the restrictions of which the plaintiff now complains, but it was his duty to so act. There is no evidence that the restrictive rules relating to Black Muslim inmates were adopted or enforced because of the religious beliefs of those inmates.

The court concludes that the plaintiff has failed to establish any violation of his constitutional rights; and that the defendant's actions are not and have not been arbitrary, capricious or unlawful.

Counsel for the defendant will prepare an order in accordance with this memorandum, submit it to counsel for the plaintiff for his approval as to form, and then present it to the court for entry.