Oscar BETHEA, Appellant,

v.

Sherman H. CROUSE, Warden, Kansas State Penitentiary, Appellee.

James TOWNSEND, Appellant,

v.

Sherman H. CROUSE, Warden, Kansas State Penitentiary, Appellee.

Nos. 2–68, 27–68.

United States Court of Appeals Tenth Circuit.

Aug. 7, 1969.

Rehearing Denied and Rehearing En Banc Denied Dec. 3, 1969.

Seth, Circuit Judge, dissented.

Theodore M. Smith, Denver, Colo., for appellant.

Edward G. Collister, Jr. (Robert C. Londerholm, Atty. Gen., on brief), for appellee.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and CHRISTENSEN, District Judge.

MURRAH, Chief Judge.

Bethea and Townsend, prison inmates, brought separate suits for damages under the Civil Rights Act (1871) against the Warden of the Kansas State Penitentiary, claiming that he was legally answerable for a severe beating inflicted upon them by another inmate, one Costello; that he failed, on request, to furnish proper medical treatment for resulting injuries; and suffered and permitted tear gas to be sprayed in Bethea's face, all in deprivation of their eighth amendment rights to be free from cruel and unusual punishment as made applicable to the states by virtue of Fourteenth Amendment due process, i. e., see Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); Beard v. Lee, 396 F.2d 749 (5th Cir. 1968); Jordan v. Fitzharris, 257 F. Supp. 674 (N.D.Cal.S.D.1966).

The trial court granted leave to prosecute the actions in forma pauperis, ruled on a motion to dismiss that a claim had been stated under 42 U.S.C. § 1983, and deferred action on a motion to appoint counsel. After filing pro forma answers, the Warden moved for summary judgment, attaching affidavits of the prison officials actually involved and inmate Costello. The plaintiffs moved pro se for summary judgment and the court treated their pro se traverses as counteraffidavits, on the basis of which summary judgment was granted in favor of the Warden. On appeal, the plaintiffs complain of failure to receive counsel and the propriety of summary judgment.

■ We have often said, and it seems to be universally agreed, that no one has a constitutional right to assistance of counsel in the prosecution or defense of a civil action. See Flowers v. State of Oklahoma, 356 F.2d 916 (10th Cir. 1966); Knoll v. Socony Mobil Oil Co., Inc., 369 F.2d 425 (10th Cir. 1966); Garrison v. Lacey, 362 F.2d 798 (10th Cir. 1966); Lee v. Crouse, 284 F.Supp. 541 (D.Kan.1967); United States ex rel. Gardner v. Madden, 352 F.2d 792 (9th Cir. 1965). We have said so in a constitutionally based civil rights action. See Lee v. Crouse, supra. In a forma pauperis action under 28 U.S.C. § 1915(d), the trial court may but is not required to appoint counsel. The federal courts in Kansas have, however, been prone to appoint counsel in civil actions where liberty is at stake. See Ratley v. Crouse, 365 F.2d 320, 321, ftnt. 3 (10th Cir. 1966). Consistent with this liberal policy, the trial judge in our case deferred action on the motion for appointment of counsel apparently to investigate the need based on merit. We certainly cannot say that he abused his discretion by not immediately or subsequently appointing counsel.

We come then to the summary judgment. To be actionable under § 1983 the acts complained of must be done (a) under color of state or local law and (b) must amount to a deprivation of a constitutionally protected right, in this case freedom from the infliction of cruel and unusual punishment. See Stringer v. Dilger, 313 F.2d 536 (10th Cir. 1963). See also Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The court found, and the Attorney General of Kansas concedes, that the acts complained of were done under color of state law. And see Talley v. Stephens, 247 F.Supp. 683 (E.D.Ark.1965). Thus, our question is whether the case was ripe for summary judgment, i. e., whether a genuine factual dispute on the question of cruel and unusual punishment as those terms are used in the eighth amendment survived the pleadings and supporting affidavits. This entails a consideration of the general principles governing prisoner complaints of constitutional deprivation in cases of this kind.

■ We have consistently adhered to the so-called "hands off" policy in matters of prison administration according to which we have said that the basic responsibility for the control and management of penal institutions, including the

discipline, treatment, and care of those confined, lies with the responsible administrative agency and is not subject to judicial review unless exercised in such a manner as to constitute clear abuse or caprice upon the part of prison officials. See Graham v. Willingham, 384 F.2d 367 (10th Cir. 1967). See also Banning v. Looney, 213 F.2d 771 (10th Cir. 1954); Powell v. Hunter, 172 F.2d 330 (10th Cir. 1949). But being fully cognizant that one does not lose all his constitutional rights when he enters a prison, see Cooper v. Pate, 378 U.S. 546, 84 S. Ct. 1733, 12 L.Ed.2d 1030 (1964); Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951); Sewell v. Pegelow, 291 F.2d 196 (4th Cir. 1961); Coffin v. Reichard, 143 F.2d 443, 155 A.L.R. 143 (9th Cir. 1944); Lee v. Crouse, supra; Jones v. Willingham, 248 F.Supp. 791 (D.Kan.1965); Jordan v. Fitzharris, supra, we have never turned a deaf ear to a bona fide claim for relief based upon the deprivation of a constitutional right when asserted by a federal or state prisoner, either in the nature of a mandamus or habeas corpus proceeding or, as here, a claim under the Civil Rights Act. See Lawrence v. Willingham, 373 F.2d 731 (10th Cir. 1967) (Habeas Corpus: arbitrariness of transfer); Jones v. Crouse, 360 F.2d 157 (10th Cir. 1966) (Habeas Corpus: inexcusable delay in processing appeal); Smoake v. Willingham, 359 F.2d 386 (10th Cir. 1966) (Habeas Corpus: forfeiture of good time); Kostal v. Tinsley, 337 F.2d 845 (10th Cir. 1964) (Habeas Corpus: solitary confinement as cruel and unusual punishment); Graham v. Willingham, supra, (Mandamus: segregated confinement as cruel and unusual punishment); Coppinger v. Townsend, 398 F.2d 392 (10th Cir. 1968) (Civil Rights Act: denial of medical aid as cruel and unusual punishment); Morgan v. Labiak, 368 F.2d 338 (10th Cir. 1966) (Civil Rights

Act: unlawful beating by arresting officer); Marland v. Heyse, 315 F.2d 312 (10th Cir. 1963) (Civil Rights Act: arbitrariness of arrests); Stringer v. Dilger, supra, (Civil Rights Act: illegal arrest, unlawful beating, and coercion by arresting officer); Downie v. Powers, 193 F.2d 760 (10th Cir. 1951) (Civil Rights Act: failure of city officials to keep peace at religious meeting).

Our concern seems to be entirely consonant with recent decisions of the United States Supreme Court and other courts in prisoner petition cases under the Civil Rights Act. See Cooper v. Pate, supra; Wright v. McMann, 387 F.2d 519 (2d Cir. 1967); Kelly v. Butler County Board of Commissioners, 399 F.2d 133 (3rd Cir. 1968); Edwards v. Duncan, 355 F.2d 993 (4th Cir. 1966); Hughes v. Noble, 295 F.2d 495 (5th Cir. 1961); Spires v. Bottorff, 317 F.2d 273 (7th Cir. 1963); Lee v. Tahash, 352 F.2d 970 (8th Cir. 1965); Brown v. Brown, 368 F.2d 992 (9th Cir. 1966); Talley v. Stephens, supra; Jordan v. Fitzharris, supra; United States ex rel. Hancock v. Pate, 223 F.Supp. 202 (N.D.Ill.1963); See also Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968). In balancing the necessity for a free hand in prison administration against the basic constitutional rights of prisoners, it seems practical and workable to say, as did the Fourth Circuit in Edwards v. Duncan, 355 F.2d 993 (4th Cir. 1966), that "[t]he hands-off doctrine operates reasonably to the extent that it prevents judicial review of deprivations which are necessary or reasonable concomitants of imprisonment."[1] See also Note, 72 Yale L.J. 506.

Very recently, in Coppinger v. Townsend, supra, we recognized the necessity and difficulty of balancing the constitutional rights of prisoners against the powers of the prison administrators in a Civil Rights action based on denial of

---

[1]. There is no contention that the state warden is immune from liability on the grounds asserted and sustained in Franklin v. Meredith, 386 F.2d 958 (10th Cir. 1967) to the effect that the act complained of was one of discretion expressly provided for and authorized by state law. See also Preble v. Johnson, 275 F.2d 275 (10th Cir. 1960).

medical treatment. After reviewing the conflicting case law on whether the denial of medical treatment amounts to cruel and unusual punishment, we found it unnecessary to decide the point, inasmuch as we concluded that in any event a difference of opinion between a physician and inmate patient on the adequacy of medical treatment was insufficient to support an actionable claim under § 1983.

The underlying principles seem to be the same regardless of the form of action or whether the acts complained of were done as a disciplinary measure or other in-custody treatment. The question in each case is whether constitutional rights were infringed under color of state or local authority.

In our case the trial judge freely acknowledged a prisoner's right to be free from cruel and unusual punishment "as basic and fundamental as the right of freedom of speech or the free exercise of religion." He recognized the delicacy of the balancing process, but, as we read him, he found it unnecessary to accommodate the prisoners' rights against the Warden's disciplinary powers for, significantly, he did not think that this was a disciplinary case "where prison authorities were called upon to preserve order or were justified in exerting necessary force to restrain or punish a prisoner", but rather "a case where an inmate was set upon and physically beaten by another inmate who had been permitted to seek plaintiff out for the ostensible purpose of talking to him."

In denying the motion to dismiss, the judge thought that "[T]he facts set forth by plaintiff in his pleadings present a picture of alleged brutal and oppressive treatment, which, if true, would certainly come within the ambit of cruel and unusual punishment." But, upon consideration of the affidavits and counteraffidavits, he seemed to think that the plaintiffs had proved "nothing more than a private claim for damages for assault and battery against the one who administered it which is not intended to be protected by the Civil Rights Act under which this action is maintained." [2] See United States ex rel. Atterbury v. Ragen, 237 F.2d 953 (7th Cir. 1956); Cole v. Smith, 344 F.2d 721 (8th Cir. 1965). In so holding, the judge concluded apparently as a matter of law that "the assault upon plaintiff was not of such a character as to shock general conscience or to be intolerable to fundamental fairness to the extent that the constitutional right to be free from cruel and unusual punishment had been violated".

While no attempt has been made to define more precisely eighth amendment "cruel and unusual punishment", the standard embraced by the trial court seems to have emerged as expressive of modern concepts of humane treatment in our social order. See Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L. Ed. 793 (1910); Robinson v. California, supra; Rudolph v. Alabama, 375 U.S. 889, 84 S.Ct. 155, 11 L.Ed.2d 119 (1963); Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); Jordan v. Fitzharris, supra. Cruel and unusual punishment may be inflicted by the unconscionable penalty imposed by statute

2. In reaching this conclusion, the trial judge was "inclined to sustain defendant's contention for it is established from the record of the case, including the affidavits and counter-affidavits submitted, that defendant did not participate in or countenance the assaults upon plaintiff; the beating administered to plaintiff by another inmate took place under conditions and circumstances in direct violation of defendant's specific orders;". But this view is at variance with his earlier conclusion and the state's concession that the acts complained of were done under color of state law and is inconsistent with Talley v. Stephens, 247 F.Supp. 683 (E.D.Ark. 1956), which the judge embraced and quoted in his order overruling a motion to dismiss: "However, it must not be overlooked that respondent [a warden] is in charge of the Penitentiary and is responsible for the acts of his subordinates including trusty guards. *He is not relieved of that responsibility by personal ignorance of abuses practiced in fields and barracks.*" Id. at 692. (Emphasis added by our trial judge.)

or by the inhumane execution of a permissible penalty imposed under a constitutionally permissible statute, i. e., see Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947); Wright v. McMann, supra; Coppinger v. Townsend, supra, and cases cited.

Accepting the trial judge's standard for determining cruel and unusual punishment, our question is whether in granting summary judgment he permissibly pierced the pleadings which he initially found sufficient to state a claim of cruel and unusual punishment to conclude, as he apparently did, from the affidavits and counter-affidavits that what he believed actually did happen was not sufficiently severe to be cruel and unusual as a matter of law.

Out of a welter of allegations, denials, affidavits, and pro se traverses, these basic undisputed facts emerge. Bethea and Townsend were brought from their isolation cells to a room in the Adjustment and Treatment Building where the Deputy Warden and other officers had gathered with inmate Costello for the ostensible purpose of having him talk to Bethea and Townsend about an alleged rape. When Bethea and Townsend entered the room, they were immediately set upon by Costello in the presence of the Deputy Warden and other officers.

Beyond these admitted facts, however, dispute arises over the extent and severity of the admitted assault. Bethea and Townsend claim that Costello, an "oversized inmate", pushed them into a corner of the room, hit them in the face, and knocked them to the floor; that the Deputy Warden then pointed a pistol in their faces and threatened to "blow them through the wall if they resisted." After questioning them about the alleged rape, they say that the Deputy Warden told Costello to "go ahead"; that Costello then proceeded to kick and beat them about the face, head, and body; and that after they had been "knocked around a number of times", the Deputy Warden finally ordered them back to their cells. Bethea and Town-send claim that the beating caused cuts on their faces and inside their mouths; fractured Bethea's jaw and injured his back; and that, despite requests, no medical aid was offered until ten days later. As a separate actionable incident, Bethea charges that the Deputy Warden, without cause, shot him in the face with tear gas.

The Warden, the Deputy Warden, other officers present, and inmate Costello tell a different story in their affidavits. They say that when Bethea and Townsend entered the room, Costello, without warning and without any prompting from the prison officials, jumped across a table, grabbed the two inmates, bumped their heads together, and slapped them three to five times at most, without knocking them off their feet. The Deputy Warden says that they were not expecting any kind of rough treatment, but admits that neither he nor his officers acted immediately to stop Costello because they were not near enough and, besides, he thought the two inmates "were getting their just deserves." The prison officials deny that they made any threats or pointed anything at Bethea and Townsend and deny that they were even carrying guns or that anything "was hurt but their pride." After this episode, the officers apparently stepped in and sent the two inmates back to their cells.

The Warden says that when he was informed that Bethea complained of a fractured jaw, he instructed the officers to take him to the prison hospital to be X-rayed; and that when Bethea refused to go, he then ordered him to the hospital for X-rays, which revealed no fracture. In the separate incident, the Deputy Warden admits that he teargassed Bethea, along with the other inmates, but it was for refusal to obey orders and caused only "inconveniences" for a short time.

█ In reviewing summary judgments we have said many times that a trial court has a duty to grant a summary judgment in an appropriate case, but that such relief is drastic and should be

applied with caution so that the parties will have a trial on any bona fide factual issues; and that while a trial court may pierce the pleadings and determine from the depositions, admissions, and affidavits whether material issues of fact exist, the pleadings should be construed liberally in favor of the party opposing the motion. See Smoot v. Chicago, Rock Island and Pacific Railroad Co., 378 F. 2d 879 (10th Cir. 1967); McCullough Tool Company v. Well Surveys, Inc., 395 F.2d 230 (10th Cir. 1968). These rules, easy to state, are especially difficult to apply in prisoner-petitioner cases for we are acutely aware of the problems faced by a trial judge in screening the endless flow of pro se complaints by prisoners against their wardens. If actions of this nature brought by prisoners are permitted indiscriminately, they could seriously disrupt prison discipline and give "jailhouse lawyers" a field day in the courts at great expense to the administration of justice and the public treasury. See Weller v. Dickson, 314 F. 2d 598 (9th Cir. 1963). The trial judge must have discretion in weeding the groundless fabrications from the genuine complaints. But at the same time we "must not play fast and loose with basic constitutional rights in the interest of administrative efficiency." Sewell v. Pegelow, 291 F.2d 196, 198 (4th Cir. 1961) quoting United States ex rel. Marcial v. Fay, 247 F.2d 662, 669 (2nd Cir. 1957).

■ The case comes to us on a basic finding that prison discipline was not involved and that an unlawful assault did occur under color of state law. Taking the Warden's version of the incident, as the trial court apparently did, we would readily agree that the admitted attack was nothing more than an assault and battery which did not amount to the infliction of cruel and unusual punishment. But taking the prisoners' version, we must conclude, as did the trial court on the motion to dismiss, that the alleged mistreatment amounts to cruel and unusual punishment. When the two versions are compared, it becomes clear to us that disputed issues of material fact survive. Considering the admitted assault, the admitted hostile attitude of the Deputy Warden and inmate Costello towards the plaintiffs, and the trial court's specific finding that discipline was not involved, we must conclude that too much of the plaintiffs' complaint was admittedly true for the trial court to pierce the allegations and hold as a matter of law that summary judgment should be granted.

■ We have said that the plaintiffs' version does, and the Warden's version does not, amount to the infliction of cruel and unusual punishment. What force amounts to simple assault and battery and how much more force amounts to cruel and unusual punishment is a difficult question of degree. In another context, but in a civil rights action, we have said that "[T]he reasonableness of the force used in making an arrest under all the circumstances is a question of fact for the jury, and the standard is the conduct of ordinary, prudent men under the existing circumstances." Morgan v. Labiak, supra 368 F.2d at 340. Making application of the reasonable man test, the ultimate issue is whether the assault as found by the factfinder is sufficiently severe in the circumstances to shock the conscience of a reasonable man. If so, the verdict should go for the plaintiffs; if not, for the Warden.

As to the teargassing complaint, we are quite satisfied that it was a purely disciplinary measure and, moreover, taking the prisoners' version, no reasonable man would say that it amounted to cruel and unusual punishment. As to the alleged attack, we do not know whether on trial the proof will support the allegations or whom, on sufficient but conflicting proof, the factfinder will believe. It may well be that plaintiffs' proof will not substantiate their stated case, in which event the trial court may determine the issue as a matter of law. See Chicago, Rock Island and Pacific Railway Company v. Howell, 401 F.2d 752 (10th Cir. 1968). We hold only that

the case was not ripe for summary judgment when judged by the standards correctly erected but we think erroneously applied by the trial judge.

Other complaints were raised by the prisoners, but as the case is being remanded for trial and the trial judge did not discuss them, we will not consider them on this appeal.

Reversed and remanded.

SETH, Circuit Judge (dissenting):

The trial court found the facts to disclose nothing more than an incident giving rise to a private claim for assault and battery against a fellow prisoner. The court also found "* * * this is not a case where prison authorities were called upon to preserve order or were justified in exerting necessary force to restrain or punish a prisoner," and "* * * plaintiff was not being subjected to discipline at the time he was assaulted."

As to the Warden, the trial court found that he "* * * did not participate in or countenance the assaults upon plaintiff; the beating administered to plaintiff by another inmate took place under conditions and circumstances in direct violation of defendant's specific orders; the plaintiff's injuries were not of a serious nature and he was not denied medical care or treatment."

From these findings and the record, the assault was an isolated incident which was the unintended outgrowth of a meeting arranged by prison officials between the several prisoners concerned. The meeting was for a prison administrative purpose. The trial court thus concluded that the incident was not within the Civil Rights Act. This conclusion is perhaps not entirely consistent with the finding that the event was under color of state law, but the basic facts as found are entirely clear. The findings in the judgment of the trial court must be considered rather than statements made by the trial court in ruling on preliminary motions.

Under the findings derived from the undisputed facts the incident was not disciplinary, and the majority opinion so agrees. The incident was not to restore order or summary discipline related to such an event. Under these circumstances it is difficult to see how it can be considered as "punishment." The trial court found it was outside the constitutional protections—it was thus a private assault, and I must agree.

The majority opinion nevertheless assumes that the assault was "punishment" without mentioning the matter and moves on to the next step, which is the degree of force used—was "it" cruel and unusual? The majority thus says in effect if the degree of force was great there is a constitutional violation, but if it was small, there is no constitutional issue.

The majority on the liability issue makes the same "punishment" assumption, and yet another one in saying the Warden is liable if the force is great and not liable if it is small.

The majority has thus said:

"What force amounts to simple assault and battery and how much more force amounts to cruel and unusual punishment is a difficult question of degree."

Also the opinion states after discussing an arrest case:

"* * * [T]he ultimate issue is whether the assault as found by the factfinder is sufficiently severe in the circumstances to shock the conscience of a reasonable man. If so, the verdict should go for the plaintiffs; if not, for the Warden."

The majority as a matter of law thus presents the only issue remaining for the trial court to be the degree of force, and not differences in the nature of the incident or the "character" of the assault as the trial court mentioned.

In my opinion the degree issue is not reached until the nature of the incident is established, and the legal issues on the liability of a Warden are examined.

The court found the undisputed facts to show the nature of the incident—the character of the assault, and this was sufficient for the summary judgment. Obviously there was a dispute on how violent the assault was, but this was not pertinent to the disposition of the case by the trial court.

As indicated above the majority concludes that, as a matter of law, the Warden is liable if the force was great, and not liable if it was small. I cannot agree. The appellants assert that the Warden deprived them of their rights. The affidavits and findings are to the contrary. The physical setting of the incident is not sufficient to overcome these facts. The showing that the incident took place in the prison and he is the Warden is not sufficient. The ordinary rules of responsibility for one's own acts or the acts of subordinates should be applied, assuming the other requirements of the Civil Rights Act are met. The Warden cannot be liable for the private-individual assault of one prisoner upon another, depending only on the severity of the assault.

The majority relies on and quotes from Talley v. Stephens, 247 F.Supp. 683 (E.D.Ark.1965), on the liability issue. The cited case however concerned regular corporal punishment administered for disciplinary reasons at the Arkansas prison farms. Corporal punishment had been formally authorized by the prison board several years before and was carried out at the prison farms if the workers did not perform their duties. The court described the nature of the punishment. This certainly was a regular course of punishment for disciplinary reasons, including the post-trial punishments mentioned in the opinion. This is quite different from the case at bar where there is nothing more than an isolated incident.

I would affirm.

"SETH, J., voted to grant a rehearing.

HICKEY and SETH voted to grant rehearing en banc.