Matthew **FISHER** et al.

v.

**M. L. WOODSON, Superintendent Unit 4.**

**Civ. A. No. 208–73–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

July 5, 1973.

Burnett Miller, III, Asst. Atty. Gen., for defendant.

MEMORANDUM

MERHIGE, District Judge.

Inmates of Correctional Unit Number 4 of the Virginia penal system bring this action to redress alleged constitutional deprivations by the defendant. Jurisdiction is attained by virtue of 42 U.S.C. § 1983, 28 U.S.C. § 1343.

This suit was initiated by three separate complaints, bearing the styles of Fisher v. Woodson, Farmer v. Woodson and Inmates v. Woodson. Because all three dealt with the same subject matter, the Court granted leave to file all three complaints in *forma pauperis* as a consolidated single action. A fourth complaint was received by the Court one week thereafter and, being substantially repetitious, it was lodged and not filed. With regard to the third document, styled Inmates v. Woodson, defendant by counsel has raised a serious charge. The *Inmates* complaint is purportedly signed by twenty inmates, although a cursory glance reveals that all the names appear to be in the same handwriting. On the *forma pauperis* affidavit attached, the purported signatures follow a statement reading:

> We the Petitioners, being duly sworn, says that we is unable because of our Poverty to pay the costs and fees of this action or to give security therefore;

Inmates Signature

Following the signatures is a notarization stating:

Subscribed and sworn to before me this 16th day of April 1973.

The complaint itself ends similarly, the same twenty names appearing to be in a single handwriting following a notation, "Inmates signature," and the notarization stating:

> We the Plaintiffs above, being sworn says that we have sign the foregoing petition and that every statement contained therein is true and correct.
>
> Subscribed and sworn to before me this 16 day of April 1973.

Notwithstanding the unity of handwriting the Court treated this

pleading, as it is duty-bound to do, with great liberality and upon the assumption that one of the twenty signed as agent of the other nineteen. See Arey v. Peyton, 378 F.2d 930 (4th Cir. 1967), Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969).

■ The defendant, however, has submitted several documents which indicate that the first signer, Lloyd Blunt, forged those signatures without complete authorization. One is an affidavit from the notary of the petition indicating that when presented to him for notarization these documents contained only Blunt's signature. The other is a letter written by one of the alleged signers to the defendant stating that he neither signed these documents nor ever intended to do so. Further, several letters to the defendant from some of the purported signers indicate that contrary to the position espoused in the *Inmates* complaint, the writers sought to reach a *detente* with the superintendent and at least one asked to be returned to the field unit. Some letters within a few days predate the *Inmates* complaint and some are dated within a few days thereof. Nevertheless, the Court has serious doubt as to the genuineness of the *Inmates* complaint and will not allow one inmate to sue on behalf of others who neither want the suit nor know about it. The Court will therefore withdraw leave to file this document in forma pauperis and the *Inmates* complaint should be dismissed. Further, the Court will refer this matter to the United States Attorney for investigation.

Plaintiff Fisher in his complaint makes several allegations, to wit:

1) That the defendant "is deliberately trying to instigate and create a riotous condition on this camp among the men."

2) That the defendant ignores and changes orders of his superiors causing the inmates frustration.

3) That the defendant shows a racist attitude.

4) That Fisher was personally "a victim of his brutal mistreating, myself and three (3) others attempted an escape, not for freedom but to get to Richmond and higher penal officials to convey to them of the conditions of the camp and the cruel and unusual harassment inflicted upon us daily by one M. L. Woodson. After we were apprehended we were beaten with a shotgun and was kick all about the body and subjects to abuse language."

Defendant has submitted in evidence two letters written by Fisher. Both letters, dated 4/9/73, deal directly with Fisher's last allegation and indirectly upon the others:

Mr. Woodson:

Sir, I been thinking about all those false remark that I have stated against you. I am writing to correct them, they were all lies. I make a mistake in trying to escape, there is no-one to blame but myself. Instead of doing the right thing, I've always done the wrong. I believe now that I can get myself on the right track and try to accomplish something constructive.

I humbly apologize for the trouble I have cause since coming on your camp.

Thank you,
Matthew Fisher

The second letter reads as follows:

Mr. James F. Howard [Director of Division of Corrections]

Dear Sir:

I am writing to you so that I can clear up a mistake that I make. I make an escape in Feb. and after being apprehended I scream brutality against Capt. Woodson. I was trying to angle my way out of the escape charge. I also make other remarks, which were lies. I've never witness any type of disorder on this unit.

I think this is the best way to start rehabilitating myself, by telling the truth.

Thank you,
Matthew Fisher 99940

■ While the Court is aware that both letters antedate the complaint by one week, the Court is satisfied that

Fisher has proceeded in these dealings with something less than candor. The Court notes further that the affidavits and records before it are probative of Fisher's view as stated in the letters and refute the contentions set forth above. On the strength of this evidence, and in view of Fisher's having failed to show any matters which are in factual dispute, the Court will pursuant to Rule 56(e) F.R.C.P. enter summary judgment for the defendant.

The Floyd Farmer complaint, written in handwriting which appears to be identical to that of the *Inmates* document, sets forth several conclusory allegations. The gravamen of this document is that the defendant used threatening language and gestures and showed insensitivity to inmates' complaints, particularly in regard to a work stoppage that allegedly occurred on 4/10/73 and 4/11/73.

██ Notwithstanding that evidence submitted by the defendant including letters from inmates and affidavits from various penal and law enforcement personnel demonstrates that the defendant used good judgment in dealing with the events of 4/10 and 4/11/73, the Court is satisfied that the allegations of the Farmer complaint do not raise constitutional issues. The alleged threatening language and gestures of a penal official do not, even if true, constitute constitutional violations; Poole v. Slayton, CA 158–72–R (E.D.Va. 10/5/72), nor does administrative insensitivity of the nature alleged. While this Court is bound to give continued force and effect to its orders and to the law with respect to the penal system; complaints of the type presented here are best presented to other administrative personnel.

For the reasons assigned, this action will be dismissed as to *Farmer* and the *Inmates* complaint, and summary judgment will enter for defendant on the *Fisher* complaint.

An appropriate order shall issue.