**Halton JEFFERSON, Plaintiff,**

v.

**Peter A. DOUGLAS, Warden, Rita Smith and Ronald Stites et al., Defendants.**

**No. CIV–79–303–D.**

United States District Court,
W. D. Oklahoma.

July 12, 1979.

---

Halton Jefferson, pro se.

Jan Eric Cartwright, Atty. Gen. of Oklahoma, by Janet L. Cox, Asst. Atty. Gen., Oklahoma City, Okl., for defendants.

## ORDER

DAUGHERTY, Chief Judge.

Plaintiff, an inmate at the Lexington Assessment and Reception Center (LARC) in Lexington, Oklahoma, brings this *pro se* action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, complaining that the above-named Defendants while acting under color of state law deprived him of certain of his civil rights while he was incarcerated in LARC.

Plaintiff's Complaint sets forth three counts:

I. "Defendant Smith violated my Constitutional rights by cancelling my limited canteen order, apparently using her authority arbitrarily without any *real* concern for my health, causing me cruel unsual [sic] punishment." (Emphasis in original.)

Plaintiff alleges that he is a diabetic and needs some kind of sugar substance within reach or on his person at all times to prevent a possible diabetic coma when his blood sugar is low; that on February 23, 1979 Defendant Rita Smith, the correctional officer responsible for security over the food services at LARC, arbitrarily cancelled his canteen order of limited items without concern for his health needs; that by cancelling his orders, Defendant Smith is preventing him from getting a product that could possibly save his life; that as the institutional rules do not permit an inmate to have sugar in his cell or on his person, the only way he can be sure of having a sugar substance on hand is to buy it from the canteen; and that Defendant Smith overstepped her bounds as she is neither a medical doctor nor is she working at the LARC canteen.

II. "Defendant Smith further violated my Constitutional rights by restricting my purchase of limited food items, preventing me from getting a needed sugar substance, creating a situation of cruel and unsual [sic] punishment. Also she showed discrimination against me by singling me out for punishment."

Plaintiff alleges that Defendant Smith has created a situation where if he tries to buy a sugar substance he is subject to being charged with an institutional violation of "disobeying a direct order" and that on February 6, 1979 Defendant Smith singled him out and cursed him. Plaintiff claims that this situation constitutes cruel and unusual punishment because of the severe mental anguish he is suffering and that his faith in Defendant Smith has been clearly shaken.

III. "Defendant Stites violated my Constitutional rights by denying me medical attention when I consulted him about my sugar intake, causing me mental anguish."

Plaintiff alleges that he went to Defendant Ronald Stites, a physician at LARC, to ask his direction with regard to what items he would be allowed to purchase; that Defendant Stites refused to exercise his authority as a medical doctor and give him a list of items he could buy; and that the only way he could purchase an item was with a list from the doctor. Plaintiff claims that Defendant Stites' refusal to give him this information participated in causing him cruel and unusual punishment and increased his mental anguish.

Plaintiff seeks relief herein in the nature of injunctive relief and damages.

After allowing Plaintiff to file his Complaint in this action *in forma pauperis* pursuant to 28 U.S.C. § 1915(a), the Court entered an Order directing the prison authorities responsible for the Lexington institution to undertake a review of the subject matter of Plaintiff's Complaint and to file with the Court a written report of their review. The purpose of this procedure was to develop an administrative record by which the Court could determine preliminary issues, including those of jurisdiction and frivolity pursuant to 28 U.S.C. § 1915(d). *See Martinez v. Aaron*, 570 F.2d 317 (Tenth Cir. 1978); also *Robinson v. Benton*, 579 F.2d 70 (Tenth Cir. 1978); *Martinez v. Chavez*, 574 F.2d 1043 (Tenth Cir. 1978).

The Court now has before it Plaintiff's Complaint, Defendants' Answer thereto, Plaintiff's Traverse to Answer, a written report of the Oklahoma Department of Corrections' review into the subject matter of Plaintiff's Complaint, and Plaintiff's Response In Answer to Special Report Review.

In their Answer, Defendants admit that the Plaintiff has a diagnosed diabetic condition; that he is under the supervision and care of the LARC medical staff and is on a controlled diet prescribed by LARC medical personnel; that his canteen privileges have been cancelled; that Defendant Smith has on occasion advised the Plaintiff that he will be subject to disciplinary action and possible punishment for continuing to use or attempt to use canteen privileges or purchase items containing a sugar substance; and that Defendant Stites consulted with the Plaintiff concerning the purchase of items from the canteen. Defendants deny that the cancellation of Plaintiff's canteen privileges was arbitrary and without regard to Plaintiff's health needs; deny that Plaintiff is in need of a sugar substance to prevent a possible diabetic coma; deny that Defendant Smith acted without authority in denying Plaintiff's canteen privileges; deny that Defendant Smith verbally abused Plaintiff, using foul language; deny that Defendant Smith has singled Plaintiff out for any arbitrary action resulting in cruel and unusual punishment; deny that Defendant Stites denied Plaintiff medical attention when he consulted with him concerning the purchase of items from the canteen; and deny that Defendant Stites refused to provide Plaintiff with a list of items that he could purchase at the LARC canteen.

In his Traverse to Answer, Plaintiff addresses several of the allegations made in the Defendants' Answer. With regard to Defendant Smith's assertion that the cancellation of Plaintiff's canteen privileges was not done arbitrarily but was done with concern for Plaintiff's health, Plaintiff contends that said Defendant's action was arbitrary as she allows him to purchase tobacco, which, according to a medical encyclopedia cited by Plaintiff, is harmful to Plaintiff's diabetic condition. Plaintiff also disputes the Defendants' denial that Plaintiff is in need of a sugar substance to prevent a possible diabetic coma. In support of his contention, Plaintiff again refers to the medical encyclopedia; he adds that two of the Defendants are not medical doctors and that Defendant Stites, who is a medical doctor, did not examine Plaintiff's blood and thus could not tell whether he needed sugar or not. Plaintiff further disputes Defendant Smith's denial that she has singled out the Plaintiff for any arbitrary acts

resulting in cruel and unusual punishment and Defendant Stites' denial that he refused to provide Plaintiff with a list of items he could purchase at the LARC canteen.

In its report the Department of Corrections indicates:

*Facts Ascertained by Investigation:*

The prisoners non-cosmetic canteen order was cancelled by defendant food service employee, Rita Smith, because the plaintiff is on an ordered 1500 calorie American Diabetic Association diet to maintain proper weight and insulin levels. The plaintiff is given a special diet each day in the institutional cafeteria and a great deal of time and effort has been expended in trying to protect this inmates health, but the plaintiffs actions in purchasing "junk foods" from the canteen are nullifying these efforts. From January 3, 1979, when he was placed on the 1500 calorie diet to March 5, 1979, the plaintiff has gained 15 pounds. This gain is certainly not attributable to the diet tray he receives from the cafeteria each day. The food service staff has monitored the plaintiffs eating habits closely and reported his condition to the medical staff for possible assistance, a copy of recent correspondence by the food service staff to the institutional physician outlining their problems with the plaintiff is attached.

B. *Action taken or recommended to resolve complaint:*

The plaintiff has been re-examined by the institutional physician and informed that it is in his best interest to remain on the diet or face serious problems with his diabetes.

Attached to the Department of Corrections' report is a copy of correspondence dated April 26, 1979 from Defendant Smith to Defendant Stites. This correspondence states:

RE: HILTON [SIC] JEFFERSON # 97 046 SPECIAL DIET—1500 CALORIE ADA

Inmate Jefferson # 97046 was received at LARC on 4-14-78. At this time Jefferson was placed on an 1800 Calorie ADA diet. On 1-3-79 Jefferson's diet was changed to 1500 Calorie ADA. Inmate Jefferson's recorded weight on 4-14-78 was 215 pounds. Jefferson's latest recorded weight (3-5-79) was 230 pounds. Inmate Jefferson # 97046 has been a constant source of problems to the Food Service staff since his reception at LARC. Jefferson refuses to abide by the diet that the medical staff has ordered for him. After cancelling all canteen privileges on edible items, and informing Inmate Jefferson of the action and why it was done, he continues to violate his diet by purchasing items from the canteen truck on Wednesdays. On Wednesday, 4-25-79, I observed Inmate Jefferson purchase one pint of ice cream (see attached Trust Fund Transfer signed by Jefferson), and I then watched Jefferson eat the ice cream while standing beside the entry wall in Dorm 5.

Also attached is a copy of an incident report given to me by Off. DeArman. In addition, I have received numerous verbal accounts of Inmate Jefferson eating in the dorms. These verbal accounts have come from both Staff members and inmates on the CC side. These accounts have been of Jefferson eating such items as bread, ice cream, peanut butter and jelly sandwiches, sweet rolls, fritos, cheetos, soda pop (other than dietetic) and candy.

Inmate Jefferson is obviously making a deliberate effort to violate the special diet ordered for him by the medical staff by purchasing food items from the canteen and obtaining food items from other inmates in the dorms. On numerous occasions Jefferson has come thru the diet line only to refuse the tray that had been prepared for him.

Like many other areas in this institution the Food Service Department is limited on staff, funds and time. We do not have the staff or time to spend personally supervising an inmate that deliberately violates his diet, nor do we have the funds to throw away special foods that have been prepared and refused by an inmate on a special diet.

On several occasions I have been questioned about Inmate Jefferson's diet. The medical staff was concerned that Jefferson was gaining weight on a 1500 Calorie ADA diet. In the past two months I have devoted a great deal of time and effort towards this inmate in an effort to control his diet, only to have him violate it at every opportunity.

I respectfully request that serious consideration be given to the possibility of restricting Inmate Jefferson # 97046, either in the dispensary or at CSH, so that his diet will be controlled.

If some type of control is not placed on this inmates diet then I feel it is useless for the Food Service Department to spend the time, effort and money involved in preparing a special diet.

Also attached to the report is a memorandum from Defendant Douglas dated February 15, 1978 with regard to special diet guidelines at LARC. The memorandum provides in part:

In light of an increasing number of special diets and the problems involved in maintaining these diets, the Lexington Assessment and Reception Center will be implementing the following procedures:

A. Medical Diets

1. Any person designated by the staff medical officer who is on a diet will be fed said diet.

2. All diets will be prepared according to the current Manual prepared by the Oklahoma State Department of Health and Oklahoma Dietetic Association.

. . . . .

Each individual who has been prescribed a diet will have his Trust Fund card flagged and will not be allowed to purchase food items from the Canteen.

. . . . .

ACTION: Food services personnel are responsible for insuring that the above procedures are implemented and are in compliance with the Food Services Manual.

Plaintiff has filed a Response In Answer to Special Report Review wherein he disputes several of the statements made in the Department of Corrections' report. He asserts that the 1500 calorie American Dietary Association diet referred to in the report "is no different from that of the menu as prepared for general population inmates except for the occassional [sic] substitution of items for pork, dietary syrup and jelly for items with sugar." He contends "that the daily calorie content of foods issued for dietary patients will many times exceed the original 1800 calorie diet limit that he was placed on initially before being switched to the current 1500 calorie diet. The weight gain refered [sic] to in the alleged statement of facts is the direct result of being issued meals that exceeded that original 1800 calorie diet limit for more than eight (8) of the twelve total months of incarceration" at LARC. He asserts that if the Court would request an "item by item specification of foods issued to dietary inmates and also an itemized listing of foods issued to the general population non-dietary inmates," it will be shown that all LARC inmates are issued an overabundance of starches. Plaintiff next disputes that he has been provided with an ample 1500 calorie diet in the form of six small meals a day; he contends that no such diets are being prepared or ever were so prepared at LARC. He again requests that the Court order an itemized report of items served, quantities issued, and the dates when the servings took place. He next disputes the Defendants' contention that he insists on consuming "junk foods" which endanger his health. He contends that any foods he consumed from the canteen were done to sustain his stabilized health since the LARC does not provide him with an adequate diet. He disputes the contention that the prohibition of his purchase of noncosmetic items through the LARC is legal and justifiable as it relates to the LARC staff's protection of his health. He contends that Defendants did not have the legal right to cancel his purchase request order from the canteen without his permission. He disputes the Defendants' report of monitoring his eating habits and contends that the people doing such monitoring are untrained as either nu-

trition experts or as medical professionals and that they have no means for concluding that any foods he consumed would be unhealthy. He argues that "the fact that plaintiff exercises vigorously several times every week and often 'NEEDS' some 'IMMEDIATE' source of carbohydrates to replenish lost or depleted energy supports plaintiffs allegation that defendants . . are dangerously affecting plaintiffs diabetic condition by arbitrarily preventing his purchase of foods items from the institutional canteen when none are available and provided by the operations of this L.A.R.C. facility."

Upon examination of the parties' pleadings, the report of the Department of Corrections, and Plaintiff's Response to said report, the Court finds that the record in this case contains sufficient facts to establish the frivolousness of Plaintiff's alleged civil rights action so as to warrant the dismissal of this action pursuant to 28 U.S.C. § 1915(d).

 Federal court deference to administrative officials in the management of penal institutions has been recognized in the absence of deprivations which represent constitutional abuses. *See, e. g., Procunier v. Martinez,* 416 U.S. 396, 404–406, 94 S.Ct. 1800, 1807–1808, 40 L.Ed.2d 224 (1974); *Marchesani v. McCune,* 531 F.2d 459, 462 (Tenth Cir. 1976), *cert. denied,* 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976); *Bethea v. Crouse,* 417 F.2d 504, 505–506 (Tenth Cir. 1969). Whether an inmate has a legitimate, medically prescribed diet is a question wholly within the province of the prison administration. *Steward v. Henderson,* 364 F.Supp. 283, 286 (N.D.Ga.1973). This policy of deference extends to the discipline, treatment, and care of those confined so long as the conduct of prison officials is not "of such a character as to shock [the] general conscience or to be intolerable to fundamental fairness." *See Bethea v. Crouse, supra,* 417 F.2d at 507; *Tuggle v. Evans,* 457 F.Supp. 1015, 1017 (D.Colo.1978).

 An examination of the record before the Court clearly reveals that the conduct of the Defendants complained of by the Plaintiff is not of such a character as to shock the general conscience or to be intolerable to fundamental fairness. The record indicates that the Plaintiff is complaining of no more than a difference of opinion between he and the Defendant prison officials as to the proper diet he is to receive for his diabetes. Such a difference of opinion between a prison medical staff and an inmate patient regarding medical care does not constitute cruel and unusual punishment in violation of *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), or sustain a claim under 42 U.S.C. § 1983. *See Twyman v. Crisp,* 584 F.2d 352, 354–55 (Tenth Cir. 1978); *McCracken v. Jones,* 562 F.2d 22, 24 (Tenth Cir. 1977); *Smart v. Villar,* 547 F.2d 112, 114 (Tenth Cir. 1976); *Paniagua v. Moseley,* 451 F.2d 228, 230 (Tenth Cir. 1971); *Coppinger v. Townsend,* 398 F.2d 392, 394 (Tenth Cir. 1968). A prisoner's mere disagreement as to the proper medical treatment does not state a constitutional claim. *Massey v. Hutto,* 545 F.2d 45, 46 (Eighth Cir. 1976). The cancellation of Plaintiff's canteen privileges does not constitute a deprivation of any right, privilege or immunity secured to Plaintiff by the Constitution and laws of the United States.

Accordingly, as the Court finds that the Plaintiff could make no rational argument on the law or facts in support of his claim in this action, the instant action is dismissed as frivolous pursuant to 28 U.S.C. § 1915(d).