James B. MILLER, Plaintiff,

v.

Boyd HAWVER, Defendant.

Civ. A. No. 79–K–532.

United States District Court,
D. Colorado.

Aug. 8, 1979.

James B. Miller, pro se.

Richard H. Goldberg, Asst. Atty. Gen., Denver, Colo., for defendant.

KANE, District Judge.

This civil action is brought pursuant to 42 U.S.C. § 1983 by Miller, an inmate at the Canon Correctional Facility in Canon City, Colorado, against Hawver, a Correctional Technician at the Canon City facility. In his complaint, Miller alleges that Hawver assaulted him without provocation as he was returning to his cell after a noon meal in the prison mess hall; that Hawver struck him with such physical violence that his neck was "severely wrenched"; and that Hawver threatened him by saying: "I'm going to knock your fucking teeth down your throat." He concludes that Hawver's conduct amounted to a violation of plaintiff's protection from cruel and unusual punishment.

Hawver filed a motion to dismiss on June 14, 1979 supported by his affidavit in which he attests that on the day of the alleged altercation he was in control of inmate movement to and from the cellhouses to the dining hall; that he gave Miller an order to proceed to cellhouse five; that Miller did not obey his order but instead remained in front of cellhouse seven; that he repeated his demand but Miller continued to ignore it; that he proceeded physically to direct Miller by the shoulder to cellhouse five; and that he threatened to take Miller to cellhouse three if he did not obey his order. Hawver opines that he exercised what he considered to be the minimum amount of force necessary to ensure compliance with the order and that Miller's actions threatened to interfere with normal inmate movement. In Hawver's belief, Miller's arrogant attitude and defiant demeanor may well have led to a serious disturbance.

Hawver's motion was converted by order of court into a motion for summary judgment pursuant to Rule 56, F.R.Civ.P., on June 19, 1979. Miller filed a traverse to the motion for summary judgment on June 28, 1979. The matter is now ready for decision.

Miller asserts that he did nothing to provoke Hawver's actions alleged herein and

that Hawver singled him out for no reason other than to harass him and cause him bodily harm. Miller has filed the affidavits of three other inmates who attest that each was present at the time of the alleged incident. These affidavits uniformly support plaintiff's rendition of the facts.

Although the fact situation before the Tenth Circuit in *Bethea v. Crouse*, 417 F.2d 504 (10th Cir. 1969), is distinguishable from the facts in the case at bar, the courts analysis is instructive:

> What force amounts to simple assault and battery and how much more force amounts to cruel and unusual punishment is a difficult question of degree. In another context, but in a civil rights action, we have said that "[T]he reasonableness of the force used in making an arrest under all the circumstances is a question of fact for the jury, and the standard is the conduct of ordinary, prudent men under the existing circumstances." . . . Making application of the reasonable man test, the ultimate issue is *whether the assault as found by the factfinder is sufficiently severe in the circumstances to shock the conscience of a reasonable man.* If so, the verdict should go for the plaintiffs; if not, for the Warden. (Emphasis added.)

*Id.* at 509. Reiterating its position in reviewing prison disciplinary matters, the Tenth Circuit stated:

> We have consistently adhered to the so-called "hands off" policy in matters of prison administration according to which we have said that the basic responsibility for the control and management of penal institutions, including the discipline, treatment, and care of those confined, lies with the responsible administrative agency and is not subject to judicial review unless exercised in such a manner as to constitute clear abuse or caprice upon the part of prison officials.

*Id.* at 505–6.

In *Sheffey v. Greer*, 391 F.Supp. 1044 (E.D.Ill.1975), the court faced a situation similar to the one in the case at bar. In that case, plaintiff alleged that defendant, a prison guard, had struck him in the face for no apparent reason, thereby violating the eighth and fourteenth amendments "by subjecting plaintiff to cruel and unusual punishment without due process of law." Plaintiff suffered superficial facial injuries as a result of the assault and battery. The court therein concluded that the wrongdoing, as alleged, did not bring defendant's conduct within the ambit of Section 1983. The court reasoned:

> Not every action that constitutes a state law tort of assault, even when it is committed under the color of state law, is sufficient in and of itself to show a claim for relief under 42 U.S.C. § 1983 . . . . In order to recover on a § 1983 claim, it is necessary for the plaintiff to show intentional conduct by one acting under color of state law which subjected him to the deprivation of rights, privileges, or immunities secured to him by the Constitution and laws of the United States . . . . The fact that a prisoner is assaulted or injured " . . . by state officials does not necessarily mean that he is deprived of any right protected or secured by the constitution or laws of the United States," *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 . . . (1945).

*Id.* at 1045–1046.

■ A review of the pleadings, affidavits, and motions filed in this case shows the basic facts to be undisputed. Miller, along with several other inmates, was leaving the dining hall on the way back to cellhouse five. Miller paused in front of cellhouse seven whereupon Hawver ordered him to move on to cellhouse five.

Irrespective of whether Miller failed to hear Hawver's initial order directing him to move on or whether Hawver overreacted to conduct that he perceived to threaten prison discipline, for purposes of this cause of action, the ensuing conduct does not rise to the level of a constitutional tort.[1] If Haw-

---

1. I have examined this distinction in a number of cases, most intensively in *Sanchez v. Mar-* *quez*, 457 F.Supp. 359 (D.C.1978), but *see* also *Tuggle v. Evans*, 457 F.Supp. 1015 (D.C.1978);

ver saw potential discipline and security problems due to Miller's alleged behavior, I am in no position to tell him now that he was not faced with an immediate dangerous situation or how to handle and how much force to utilize to control such a situation. If a pattern of practice were alleged or even discernible, this reluctance would not obtain.

The Second Circuit, in *Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973), recognized the hypersensitive situations that prison guards are confronted with in the day to day operations of a penal institution.

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. . . .

*Id.* at 1033.

The court in *Fisher v. Woodson*, 373 F.Supp. 970 (E.D.Va.1973), held that "alleged threatening language and gestures of a penal official do not, even if true, constitute constitutional violations . . . ." *Id.* at 973. Although Hawver's rhetoric is less than genteel, the alleged threat to knock Miller's "fucking teeth" down his throat does not amount to an infliction of cruel and unusual punishment. As the Second Circuit noted, in *Mukmuk v. Commissioner of Department of Correctional Services*, 529 F.2d 272 (2nd Cir. 1976),

*Holder v. Claar*, 459 F.Supp. 850 (D.C.1978); *Mingo v. Patterson*, 455 F.Supp. 1358 (D.C. 1978) and *Montoya v. Tanksley*, 446 F.Supp. 226 (D.C.1978). Apparently, the study can best be categorized as *vox clamantis in deserta*.

It is the guardian of discipline who becomes the tort-feasor defendant when a civil rights suit is brought. The public officer may inflict harm which is a violation of a constitutional prohibition without conscious plan or illicit purpose. . . But the test of liability ought not ignore entirely the mores of the times or even the particular *mores* of prison guards, untrained in the lawyers' view of life.

*Id.* at 278.

Under state law, the assault and battery alleged here may be compensable. However, the question is whether it violated the Constitution. As the United States Supreme Court in *Baker v. McCollan*, —— U.S. ——, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), recently held:

> Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.

*Id.* at ——, 99 S.Ct. at 2695.

The court, in *Sheffey v. Greer, supra*, attempted to articulate the elements necessary to support liability in this type of claim under Section 1983:

> [T]his Court believes the acts challenged must do more than offend some fastidious squeamishness or private sentimentalism. They must shock the conscience, *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), or constitute force that is "brutal", . . . .. "Thus, a plaintiff must show more than that he has suffered an intentional tort at the hands of a defendant who was acting under color of state law; he must prove acts which amount to shocking or brutal conduct," . . . ..

Perhaps the decision of the United States Supreme Court in *Baker v. McCollan, infra*, will receive greater attention. Suffice it to say here that § 1983 is not a general or common law tort claims statute.

Here, plaintiff, who filed his complaint within "a half hour after the initial incident occurred [sic]" . . . has alleged suffering "superficial facial damages" . . . due to the single blow of defendant. A single punch in the face by a prison guard does not constitute cruel and unusual punishment . . . . Although a spontaneous attack by a guard is "cruel" and it is hoped "unusual," it does not fit any ordinary concept of punishment . . . .

This Court is of the opinion that plaintiff's complaint does not meet the test enunciated above, which would raise the degree of wrongdoing involved up to a deprivation of a federally guaranteed right, i. e., the act challenged is not one which involves shocking or brutal conduct.

"Alleged assaults by state prison officials, without any showing of a constitutional violation, are matters for consideration of internal prison discipline of interest solely to the state and actionable, if at all, in the state courts," . . . The general standard is that only in exceptional circumstances will a federal court interfere with matters that involve the internal management of a state prison . . . . Since plaintiff has failed to allege any violation of his constitutional rights, his complaint based upon 42 U.S.C. § 1983 must be dismissed.

*Id.* at 1046–1047.

In the case at bar there is a paucity of averments regarding the extent of injury suffered by plaintiff as a result of the alleged attack. Although Miller's claims of injury are not questioned, the pleadings and affidavits filed are more reflective of the trepidation shared by Miller and his fellow inmates as a result of this isolated incident of force. Perhaps they are justified in expressing these sentiments. However, given the facts as they appear from the pleadings before the court, Hawver's conduct neither "shock[s] the conscience of a reasonable man" nor does the alleged act "amount to shocking or brutal conduct." *See Bethea v. Crouse, supra; Sheffey v. Greer, supra.* Of course, I do not pass judgment on the merits of the allegations if they become the subject of a state court claim sounding in tort.

 Although prisoner *pro se* civil rights complaints must be reviewed with liberality in determining whether a constitutional deprivation has been alleged, the complaint filed herein alleges no set of facts which would support a cognizable federal claim under Section 1983. Accordingly

IT IS ORDERED that this complaint and civil action are dismissed for failure to state a claim upon which relief can be granted.